NUMBER 13-01-111-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG






JOE L. ALANIZ , Appellant,



v.




GAYLORD HOYT , Appellee.






On appeal from the 28th District Court

of Nueces County, Texas.





O P I N I O N

Before Justices Yañez, Castillo, and Dorsey (1)

Opinion by Justice Castillo


 This is a defamation case. Appellant Joe L. Alaniz ("Alaniz") brings thirteen issues complaining of the trial
court's: (1) admission and exclusion of summary-judgment evidence; and (2) granting of summary judgment in
favor of appellee Gaylord Hoyt ("Hoyt"). We reverse and remand. 

I. JURISDICTION


 Our initial inquiry is always whether we have jurisdiction over an appeal. Tex. Ass'n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). The question of jurisdiction is a legal issue. Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Accordingly, we follow the de novo standard of review. Id. 
Jurisdiction of a court is never presumed. El-Kareh v. Tex. Alcoholic Beverage Comm'n,
874 S.W.2d 192, 194 (Tex. App.-Houston [14th Dist.] 1994, no writ). If the record does not affirmatively
demonstrate the appellate court's jurisdiction, the appeal must be dismissed. Id. Absent an express grant of
authority, we do not have jurisdiction to review an interlocutory order. Steeple Oil & Gas Corp. v. Amend,
394 S.W.2d 789, 790 (Tex. 1965) (per curiam); see Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon
Supp. 2003). Therefore, before we consider the issues, we first must determine if the order granting summary
judgment is a final judgment. 

A. The Pleadings of the Parties


 Alaniz, a certified public accountant, is the vice-president for business and finance and chief financial officer
of Del Mar College in Corpus Christi, Texas. Alaniz supervises the financial accounting and bookkeeping of
Del Mar College. Among the funds entrusted to the business and finance office are custodial funds for
memorials, scholarships, student organizations, and other designated purposes, including custodial funds for
the Del Mar College Foundation. These custodial funds are referred to as "Agency accounts" for accounting
purposes. 

 Hoyt is a mathematics professor at Del Mar College. In a second amended petition filed January 12, 2001,
Alaniz alleged that Hoyt made oral and written statements about him that were false and defamatory per se. 
Specifically, Alaniz alleged that Hoyt made statements, with knowledge that they were false or with reckless
disregard for their truth or falsity, that Alaniz: (1) "commingled" Del Mar College funds with Del Mar College
Foundation funds; (2) falsified documents regarding the allocation of interest to Del Mar College checking
accounts; (3) "skimmed" interest from Del Mar College investments; and (4) was the subject of a criminal
investigation. Alaniz pleaded the following specific allegations:

 1. "Commingling." On September 7, 1997, Hoyt wrote a letter to Senator Carlos Truan that stated, "It is
my belief that to make these loans someone at Del Mar College had to mix College money with Foundation
money to make the accounts balance." On September 20, 1997, Hoyt repeated the statement in a letter to
Ralph Diaz, chair of the Audit Committee of the Del Mar College Board of Regents. On January 19, 1998,
Hoyt again repeated the statement in a letter to the trustees of Del Mar College Foundation. On various
occasions, Hoyt told members of the Del Mar College Board of Regents that Alaniz directed the mixing or
"commingling" of funds of Del Mar College with funds of Del Mar College Foundation. Hoyt repeated the
"commingling" statement at a July 6, 1998 Del Mar College faculty council meeting and in various
conversations with employees, faculty, administrators, and regents of Del Mar College around that date. 

 2. Falsifying Documents. In April of 1998, in private conversations with the Del Mar College Board of
Regents, and at an April 29, 1998 meeting of the Del Mar College Board of Regents, Hoyt stated that Alaniz
had falsified documents regarding the allocation of checking account interest to Del Mar College accounts. 
Hoyt repeated the falsifying-documents statement at the same July 6, 1998 faculty council meeting and in
various conversations with employees, faculty, administrators, and regents of Del Mar College around that
date. 

 3. "Skimming." On June 28, 1998, in a memorandum to Del Mar College President Terry Dicianna
("Dicianna") that Hoyt distributed to the local press and to the Del Mar College Board of Regents, Hoyt
stated that it had been confirmed that Alaniz was or had been "skimming interest" away from Del Mar College
investments. Hoyt repeated the assertion at the same July 6, 1998 faculty council meeting and in various
conversations with employees, faculty, administrators, and regents of Del Mar College around that date. 

 4. Criminal Investigation. Also at the July 6, 1998 faculty council meeting and in various conversations
with employees, faculty, administrators, and regents of Del Mar College around that date, Hoyt "claimed or
implied" that Alaniz was under criminal investigation. 

 In his first amended answer, Hoyt filed a general denial and asserted that: (1) Alaniz was a public official; (2)
a quasi-judicial privilege applied to the statements; (3) a qualified privilege applied to his statements because
he communicated them to persons with a common or business interest in the communications; (4) the
statements were true; (5) Hoyt did not make the statements with actual malice or with reckless disregard for
the truth; and (6) Alaniz's own physical condition or his own acts or omissions were the sole cause or,
alternatively, a proximate cause of the occurrence in question and Alaniz's alleged damages, entitling Hoyt to
contribution from Alaniz. On January 18, 2001, Hoyt objected to and asked the court to strike Alaniz's second
amended petition as untimely and as asserting new causes of action and allegations of fact not previously
identified in discovery. No order on Hoyt's motion to strike the second amended petition appears in the
record. 

B. The Summary-Judgment Proceedings


1. Hoyt's Grounds


 On December 28, 2000, Hoyt filed both a no-evidence and a traditional motion for summary judgment. In the
no-evidence portion of his motion, he asserted that Alaniz was a public figure and therefore bore the burden of
proving that Hoyt made any statements with "actual malice." Hoyt also focused on the "actual malice"
element in his traditional motion for summary judgment. In support of his contention that he did not make the
statements with actual malice, and to assert in particular the absence of any indication he made any statements
with serious doubt as to their truthfulness, Hoyt included excerpts from his own deposition testimony. In
addition, on January 4, 2001, Hoyt filed his own supporting affidavit regarding his state of mind with regard to
the challenged statements. He argued that he did not intend any connotation of criminality or illegality in his
use of the word "skimming." Finally, Hoyt also moved for a partial summary judgment on the ground that
statements he made in complaining about Alaniz to the Texas State Board of Public Accountancy were
privileged. 

2. Alaniz's Response


 In his response to Hoyt's motion for summary judgment, which Alaniz filed January 12, 2001, Alaniz did not
dispute Hoyt's characterization of Alaniz's status as a public official. Instead, Alaniz asserted: (1) the
existence of a genuine issue of material fact as to whether Hoyt acted with malice; and (2) that Hoyt's
statements were defamatory per se as a matter of law. As summary-judgment evidence, Alaniz attached to his
response affidavits, documents, and deposition excerpts. By separate motion also filed January 12, 2001,
Alaniz asked the trial court to take judicial notice of a definition of the word "skim" from the Cambridge
Dictionary of American English. (2) 

3. Hoyt's Reply


 Hoyt filed a reply on January 19, 2001. He attached excerpts from Alaniz's deposition testimony. 

 

4. The Summary-Judgment Order


 The "Order Granting Defendant Gaylord Hoyt's Motion for Summary Judgment," signed January 25, 2001,
recited as follows:

 On the 25th [sic] (3) day of January, 2001, came to be considered Defendant Gaylord Hoyt's Motion for
Summary Judgment. After reviewing the Motion and Response thereto and hearing argument of counsel, it is
the opinion of the Court that the Motion is well taken and should be in all things GRANTED. 



 It is, therefore, ORDERED, ADJUDGED AND DECREED that Defendant Gaylord Hoyt's Motion for
Summary Judgment, is in all things GRANTED and that Plaintiff Joe L. Alaniz take nothing against Defendant
Gaylord Hoyt, that all claims asserted by plaintiff are denied, and that all costs of court be taxed against
plaintiff. All relief requested and not expressly granted is denied. 



5. Finality


 After examining the pleadings and summary-judgment record, we conclude that

the "Order Granting Defendant Gaylord Hoyt's Motion for Summary Judgment" signed January 25, 2001
disposes of all pending parties and claims. See Guajardo v. Conwell, 46 S.W.3d 862, 863-64 (Tex. 2001) (per
curiam). Accordingly, we find that the "Order Granting Defendant Gaylord Hoyt's Motion for Summary
Judgment" is a final judgment over which we have jurisdiction. See id. 

 We now address the issues on appeal. We first turn to the evidentiary complaints. 

II. THE EVIDENTIARY ISSUES


 In his second issue, Alaniz complains Hoyt's affidavit was untimely and should not be considered part of the
summary-judgment record. In issue twelve, Alaniz asserts that the trial court erred in sustaining Hoyt's
objection to the affidavit of Anne Stewart, a professor at Del Mar College and chair of the Del Mar College
faculty council during the 1998-1999 term (the "Stewart affidavit"). In issue thirteen, Alaniz maintains that
the trial court should have taken judicial notice of the dictionary definition of "skim" and the defamatory
potential of the word "skimming." 

A. The Objections


 By written objection filed January 11, 2001, Alaniz complained that the Hoyt affidavit filed January 4, 2001
was untimely in that Hoyt filed it less than twenty-one days before the summary-judgment hearing then set for
January 19, 2001. Alaniz also objected to the January 19, 2001 hearing date, citing his lack of the requisite
twenty-one days' notice. The record does not reflect that Hoyt sought leave of court to file the affidavit to
which Alaniz objected. 

 On January 18, 2001, Hoyt filed a written objection to Alaniz's summary-judgment evidence. Specifically,
Hoyt objected to the Stewart affidavit, arguing it should be struck because Alaniz had not identified Stewart's
testimony in discovery responses. Hoyt also objected that a letter dated February 28, 1998 from Hoyt to John
Moore at the Texas State Board of Public Accountancy (the "Moore letter") was privileged and should be
struck. Further, Hoyt objected to Alaniz's request that the trial court take judicial notice of the definition of
"skim." 

 The court held a summary-judgment hearing January 23, 2001. Alaniz reasserted his objection to the
untimeliness of Hoyt's affidavit. Hoyt reasserted his objections to Stewart's affidavit and the Moore letter. 

B. The Trial Court's Rulings


 On January 25, 2001, the judge signed an order sustaining Hoyt's objection to inclusion of the Stewart
affidavit and the Moore letter in the summary-judgment record. That same date, the judge signed an order
sustaining Hoyt's objection to Alaniz's request for judicial notice of the meaning of the word "skim." No order
with regard to Alaniz's objection to the untimeliness of Hoyt's summary-judgment affidavit appears in the
record. 

C. The Evidentiary Arguments


1. The Untimeliness of Hoyt's Summary-Judgment Evidence


 In issue two, Alaniz asserts that the untimeliness of Hoyt's summary-judgment affidavit filed on January 4,
1991 bars its consideration on appeal. In his appeal brief, Hoyt concedes that his affidavit was untimely. He
argues that the record does not reflect that the trial court considered the late-filed affidavit. He points out that
the substance of the affidavit is repeated in timely filed deposition excerpts. 

 We agree with Alaniz that when a movant, without leave of court, files summary-judgment evidence less than
twenty-one days before a summary-judgment hearing, a presumption attaches that the trial court did not
consider the late-filed evidence. Vasquez v. Carmel Shopping Ctr. Co., 777 S.W.2d 532, 535 (Tex.
App.-Corpus Christi 1989, writ denied). Accordingly, we hold that Hoyt's summary-judgment affidavit filed
January 4, 2001 is not part of the summary-judgment record. See Tex. Airfinance Corp. v. Lesika,
777 S.W.2d 559, 561-62 (Tex. App.-Houston [14th Dist.] 1989, no writ) (citing INA of Tex. v. Bryant,
686 S.W.2d 614, 615 (Tex. 1985)). We sustain Alaniz's second issue as it relates to Hoyt's
summary-judgment affidavit. 

 Also in his second issue, Alaniz asserts that excerpts from Alaniz's deposition filed by Hoyt four days before
the summary-judgment hearing were untimely. Alaniz is correct that a non-movant may submit evidence in
support of its response to a summary-judgment motion only up to seven days before the hearing. Knapp v.
Eppright, 783 S.W.2d 293, 296 (Tex. App.-Houston [14th Dist.] 1989, no writ). However, the seven-day
limit relied on by Alaniz does not apply to a movant's reply to a non-movant's response. Eppright,
783 S.W.2d at 296; see Tex. R. Civ. P. 166a(c). Rule 166a(c) does not specify the time within which a
movant's reply to a non-movant's response must be filed. In any event, the record does not reflect that Alaniz
objected, either in writing or at the summary-judgment hearing, to the trial court's consideration of the
evidence Hoyt submitted in reply to Alaniz's response. Thus, Alaniz did not preserve any error as to the trial
court's consideration of the summary-judgment materials attached to Hoyt's reply. Eppright, 783 S.W.2d at
296; see Tex. R. App. P. 52. Accordingly, we hold that the excerpts of Alaniz's deposition, filed January 19,
2001 and attached to Hoyt's reply to Alaniz's response to Hoyt's motion for summary judgment, are part of the
summary-judgment record. Eppright, 783 S.W.2d at 296. We overrule Alaniz's second issue as it relates to
the deposition excerpts attached to Hoyt's reply to Alaniz's response. 

2. The Striking of the Stewart Affidavit


 Alaniz attached the Stewart affidavit to his response to Hoyt's motion for summary judgment. Hoyt moved to
strike the Stewart affidavit on the ground that "it sets forth factual allegations that have not previously been
identified in Plaintiff's responses to Interrogatories (and more specifically, Plaintiff's response to Defendant's
Interrogatory No. 6) or responses to Requests for Disclosure." We note that Hoyt did not attach the
referenced discovery responses to his objection, nor does the record otherwise reflect that the referenced
discovery responses were filed, either by Hoyt or by Alaniz. Also, the record does not reflect that Alaniz
sought to establish good cause for any failure to timely amend his discovery responses to identify Stewart's
knowledge of relevant facts. 

 The trial court agreed with Hoyt and struck the Stewart affidavit. On appeal, Alaniz argues that
supplementation of discovery responses is not a prerequisite to a party's use in a summary-judgment
proceeding of affidavits of previously undisclosed witnesses, citing Gandara v. Novasad, 752 S.W.2d 740,
743 (Tex. App.-Corpus Christi 1988, no writ). Hoyt counters that any error in the trial court's exclusion of
the Stewart affidavit does not require reversal unless "the whole case turns on the particular evidence admitted
or excluded," citing Ebasco Constructors Inv. v. Rex, 923 S.W.2d 694, 700 (Tex. App.-Corpus Christi 1996,
writ denied). 

 We agree with both Alaniz and Hoyt. The rules regarding discovery supplementation do not apply to the
comprehensive framework of summary-judgment proceedings. Johnson v. Fuselier, 83 S.W.3d 892, 897
(Tex. App.-Texarkana 2002, no pet.) (citing Novasad, 752 S.W.2d at 742). We hold that the trial court
abused its discretion in striking the Stewart affidavit. See Fuselier, 83 S.W.3d at 898. However, a harm
analysis is required. See id. 

 We have reviewed the summary-judgment record. We conclude that Stewart's affidavit contains the only
evidence in the record of the substance of conversations among Stewart, Hoyt, and third parties that took
place on July 13, 1998 and August 12, 1998. As discussed in more detail below, our determination of whether
Alaniz met his burden of producing evidence in response to Hoyt's no-evidence motion for summary judgment
turns on the contents of those two conversations. Accordingly, we hold that the trial court's striking of the
Stewart affidavit was harmful. See Ebasco Constructors, 923 S.W.2d at 700. We sustain Alaniz's twelfth
issue as it relates to the Stewart affidavit. 

3. The Striking of the Moore Letter


 Also in issue twelve, Alaniz asserts that the trial court erred in striking the Moore letter on the basis of
judicial privilege. Alaniz does not dispute that an absolute privilege originally attached to the Moore letter. 
However, Alaniz argues that: (1) the Moore letter is admissible summary-judgment evidence of Hoyt's actual
malice in repeating his statements about Alaniz after receiving an auditor's report absolving Alaniz of
malfeasance; and (2) Hoyt re-expressed the same statements he made in the Moore letter "outside the
penumbra of judicial privilege" when he repeated the statements at the Del Mar College faculty council
meeting on July 6, 1998. Hoyt responds that: (1) the statements made by him to Moore were absolutely
privileged; and (2) Alaniz waived his complaint by not "identifying the exclusion of this evidence as one of his
issues for appeal pursuant to Texas Rule of Appellate Procedure, 38.1." We address first Hoyt's waiver
argument. 

a. Waiver


 Hoyt correctly points out that Alaniz did not identify in an issue on appeal Alaniz's objection to the trial
court's striking of the Moore letter. Nonetheless, Alaniz raises the complaint in his argument under issue
twelve. The supreme court instructs that we must consider a party's arguments supporting each issue on
appeal, not just the wording of the issue itself. Anderson v. Gilbert, 897 S.W.2d 783, 784 (Tex. 1995) (per
curiam). Further, this Court long has applied a liberal briefing policy. Ottis v. Haas, 569 S.W.2d 508, 511
(Tex. App.-Corpus Christi 1978, writ ref'd n.r.e.). We construe each issue on appeal in light of our
understanding of the arguments made and authorities cited by the appellant. Id. Accordingly, we find that
Alaniz preserved on appeal his challenge to the trial court's striking of the Moore letter. We turn to the
substance of Alaniz's complaint. 

b. Standard of Review 


 The admission or exclusion of summary-judgment evidence rests in the sound discretion of the trial court. 
Alejandro v. Bell, 84 S.W.3d 383, 388 (Tex. App.-Corpus Christi 2002, no pet.) A trial court abuses its
discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable
manner. Id. (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)). A trial
court does not abuse its discretion if it decides a matter within its discretion differently than the appellate court
would. Id. (citing Downer, 701 S.W.2d at 241-42). 

c. Analysis


(1) The Law of Judicial Privilege


 A privilege to communicate may be either absolute or qualified. Gallegos v. Escalon, 993 S.W.2d 422, 424
(Tex. App.-Corpus Christi 1999, no pet.). An absolute privilege attaches, regardless of motive, in situations
that involve administration of the branches of government. Id. Words written or spoken in the course of a
judicial proceeding are absolutely privileged. Id.; Rose v. First Am. Title Ins. Co., 907 S.W.2d 639, 641 (Tex.
App.-Corpus Christi 1995, no writ). Judicial privilege extends to statements made in quasi-judicial
proceedings before governmental executive officers, boards, and commissions exercising quasi-judicial
powers. Gallegos, 993 S.W.2d at 425; see Town of S. Padre Island v. Jacobs, 736 S.W.2d 134, 144 (Tex.
App.-Corpus Christi 1987, writ denied) (op. on reh'g) (discussing "nature and incidence of quasi-judicial
powers"). Nonetheless, the absolute privilege is lost if the holder of the privilege repeats the statements
outside the protected context within which the statements originally were made. Rose, 907 S.W.2d at 642
(discussing De Mankowski v. Ship Channel Dev. Co., 300 S.W. 118 (Tex. Civ. App.-Galveston 1927, no
writ)). 

(2) The Contents of the Moore Letter


 In his second amended petition, Alaniz did not allege against Hoyt any liability for defamation based on the
contents of the Moore letter. Nor does Alaniz claim that Hoyt published the letter itself to third parties. See
Rose, 907 S.W.2d at 642 (distinguishing circumstance where defendant re-publishes to third parties complete
document subject to judicial privilege from circumstance where defendant repeats to third parties statements
contained in privileged document). Thus, in determining if the trial court abused its discretion in striking the
Moore letter, we must examine the contents of the letter itself and determine: (1) the specific statements made
by Hoyt; and (2) whether the summary-judgment evidence, viewed through the prism of Alaniz's allegations in
the second amended petition, shows that Hoyt repeated the same statements outside the context of the Moore
letter. See Rose, 907 S.W.2d at 641 (reviewing summary judgment in context of pleadings and
summary-judgment evidence). The Moore letter recites in relevant part:

 The chief financial officer of Del Mar College is Jose L. Alaniz. He holds himself out to be a Certified Public
Accountant. He has been employed by Del Mar College since July 1977 and has served as the chief financial
officer and the chief fiscal officer since February 1, 1992. His title is vice president of business and finance. 
Mr. Alaniz is also responsible for funds of the related but separate Del Mar College Foundation. 



 The complaint is that Mr. Alaniz is charged with the responsibility to maintain proper and adequate internal
controls, but he fails to maintain internal controls. Under Mr. Alaniz's direction there seems to be a
commingling of funds of the College and the separate Foundation. In addition, a "President's Fund" is part of
the Foundation, and disbursements from this Fund are allegedly improper. The College apparently has also
improperly accounted for and retained funds of the Foundation arising from unclaimed scholarships awarded
by the Foundation. A listing of improprieties in accounting are beyond the scope of this letter. 



 To explain the suspected unethical acts of Mr. Joe Alaniz, I enclose two audit reports of Del Mar College
and other related documents, which need no explanation. The president of Del Mar College, Terry L.
Dicianna, explained to the Board of Regents that the errors were caused because the reconciliations were
performed by "clerks and secretaries" who were "inadequately trained." Incidentally, Del Mar College
includes a department of accounting. There has been totally lacking any acceptance of accountability by
President Dicianna and/or Mr. Alaniz. (4)



 Thus, Hoyt made privileged statements in the Moore letter that Alaniz: (1) failed to maintain internal
controls; (2) "commingled" Del Mar College funds with Del Mar College Foundation funds; (3) allegedly
made improper disbursements from the "President's Fund"; (4) improperly accounted for and retained
unclaimed Del Mar College Foundation scholarship funds; and (5) engaged in suspected unethical acts. Of
these five statements, only Hoyt's repetition to others of the statement that Alaniz "commingled" funds serves
as a specific basis for an allegation of defamation in Alaniz's second amended petition. 

(3) Application of the Law of Judicial Privilege to the Moore Letter


 The summary-judgment record shows that Dicianna testified Hoyt repeated in Dicianna's presence and in the
presence of third parties the statement that Alaniz had "commingled" funds. Further, in Alaniz's
summary-judgment affidavit, Alaniz testified:

 I was present during a meeting of Del Mar College faculty and administrators in July 1998, at which Dr.
Gaylord Hoyt made false and defamatory accusations that . . . I had improperly mixed or commingled funds of
Del Mar College with funds of the Del Mar College Foundation.



On the other hand, Hoyt presented no controverting evidence he did not repeat, outside the protection of the
Moore letter, the statement that Alaniz had "commingled" funds. (5) The De Mankowski court held:

 The privilege accorded a litigant which exempts him from liability for damages caused by false charges made
in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go
out in the community and make false and slanderous charges against his court adversary and escape liability
for damages caused by such charges on the ground that he had made similar charges in his court pleadings.



De Mankowski, 300 S.W. at 122. The undisputed summary-judgment evidence shows that Hoyt, by stepping
outside the privileged circumstance of his letter to Moore to repeat to third parties that Alaniz had
"commingled" funds, waived judicial privilege from any liability for that statement. See id. In any event,
Alaniz did not seek in his second amended petition to impose liability on Hoyt for any of the statements in the
Moore letter. Rather, Alaniz sought to include the Moore letter as part of the summary-judgment evidentiary
record. We decline to extend an evidentiary privilege to a statement over which any judicial privilege has been
waived. 

 Further, disclosure of "any significant part" of a document subject to an evidentiary privilege waives the
privilege as to the document and results in an implied waiver of the privilege as to any additional material that
was not disclosed. See Terrell State Hosp. of the Tex. Dept. of Mental Health and Mental Retardation v.
Ashworth, 794 S.W.2d 937, 940 (Tex. App.-Dallas 1990, orig. proceeding) (discussing principle that
disclosure of information that constitutes "significant part" of document subject to hospital committee
privilege waives privilege as to undisclosed material in underlying document). We find that Hoyt's statement
that Alaniz had "commingled" funds was a "significant part" of Hoyt's communication to Moore. Accordingly,
in the absence of any controverting evidence that Hoyt did not repeat to third parties the statement that Alaniz
had "commingled" funds, we find that Hoyt waived any evidentiary privilege that attached to that statement as
well as to the remainder of the contents of the Moore letter. We hold that the trial court abused its discretion
in sustaining on judicial privilege grounds Hoyt's objection to admission of the Moore letter into the
summary-judgment evidentiary record. See De Mankowski,300 S.W. at 122. Again, a harm analysis is
required. See Ebasco Constructors, 923 S.W.2d at 700. 

 We have reviewed the summary-judgment record. We conclude that the record contains, other than in the
Moore letter (as discussed in detail below), evidence that Hoyt, after receipt of an auditor's report absolving
Alaniz of malfeasance, repeated to third parties the statement that Alaniz had "commingled" funds. We hold
that the trial court's striking of the Moore letter was harmless. See id. We overrule Alaniz's twelfth issue as it
relates to the Moore letter. 

III. SUMMARY-JUDGMENT STANDARDS OF REVIEW


 The function of summary judgment is to eliminate patently unmeritorious claims and defenses, not to deprive
litigants of the right to a jury trial. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 n.5
(Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64, 68 (Tex. 1972). On appeal, the standard of review for the
grant of a motion for summary judgment is determined by whether the motion was brought on no-evidence or
traditional grounds. Tex. R. Civ. P.166a(i), (c); Ortega v. City Nat'l Bank, 97 S.W.3d 765, at *10 (Tex.
App.-Corpus Christi 2003, no pet. h.) (op. on reh'g). The difference in relative burdens between the parties in
the two types of summary-judgment motions is significant. Id. Determination of the nature of the motion for
summary judgment under analysis is critical. Id. 

 The trial court did not specify the ground or grounds on which it granted Hoyt's motion for summary
judgment. Accordingly, we will uphold the summary judgment if any of the grounds raised by Hoyt in his
summary-judgment motions has merit. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999);
Ortega, 97 S.W.3d 765, at *13. Hoyt separately presented and briefed his no-evidence and traditional
motions for summary judgment. Therefore, we analyze the motions separately. See Scripps Tex. Newspapers,
L.P., v. Belalcazar, No. 13-02-414-CV, 2003 Tex. App. LEXIS 1728, at *9-*10, *26-*27 (Corpus Christi
Feb. 27, 2003, pet. filed).

A. No-Evidence Summary-Judgment Standards


 A no-evidence motion for summary judgment asserts that there is no evidence of one or more essential
elements of a claim on which the adverse party will bear the burden of proof at trial. Tex. R. Civ. P.166a(i);
Belalcazar, 2003 Tex. App. LEXIS 1728, at *26. We apply the same legal-sufficiency standard of review to a
no-evidence summary judgment as we apply to a directed verdict. Belalcazar, 2003 Tex. App. LEXIS 1728,
at *26-*27. "Like a directed verdict, then, the task of the appellate court is to determine whether the plaintiff
has produced any evidence of probative force to raise fact issues on the material questions presented." Id., at
*27 (quoting Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex. App.-Austin 1998, no pet.)). To raise a
genuine issue of material fact, all that is required of the non-movant in responding to a no-evidence motion for
summary judgment is to produce a scintilla of probative evidence. Ortega, 97 S.W.3d 765, at *12. "Less than
a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or
suspicion' of a fact." Id. (citing Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.-San Antonio 1998,
pet. denied) (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983))). Conversely, more than a
scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions." Ortega,97 S.W.3d 765, at *12 (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 25 (Tex. 1994)). The movant has no burden to attach any evidence to a no-evidence motion for summary
judgment. Tex. R. Civ. P. 166a(i); Ortega, 97 S.W.3d 765, at *13. The non-movant bears the entire burden
of producing evidence to defeat a no-evidence motion for summary judgment. Id. 

B. Traditional Summary-Judgment Standards


 We review de novo a trial court's grant or denial of a traditional motion for summary judgment. Ortega,
97 S.W.3d 765, at *11. The movant bears the burden of showing both no genuine issue of material fact and
entitlement to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Ortega, 97 S.W.3d 765, at *11. In
deciding whether there is a genuine issue of material fact, we take evidence favorable to the non-movant as
true. Ortega, 97 S.W.3d 765, at *11. We make all reasonable inferences and resolve all doubts in favor of the
non-movant. Id. Summary judgment for a defendant is proper if the defendant disproves at least one element
of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each
claim. Id. This standard applies to summary-judgment motions in defamation actions. Belalcazar, 2003 Tex.
App. LEXIS 1728, at *10. A non-movant has the burden to respond to a traditional summary-judgment
motion if the movant conclusively: (1) establishes each element of its cause of action or defense; or
(2) negates at least one element of the non-movant's cause of action or defense. See Ortega, 97 S.W.3d 765,
at *11. 

 We turn now to the heart of the parties' dispute. 

IV. ANALYSIS


A. The Law of Defamation


 Texas law recognizes two types of defamation: libel and slander. Fields v. Keith, 174 F. Supp. 2d 464, 473
(E.D. Tex.), aff'd, 273 F.3d 1099 (5th Cir. 1999). An action for libel requires publication to a third party of
written defamatory words about the plaintiff. Id. (citing M.N. Dannenbaum, Inc. v. Brummerhop,
840 S.W.2d 624, 633-34 (Tex. App.-Houston [14th Dist.] 1992, writ denied)). Slander requires defamatory
words about the plaintiff to be spoken, without legal excuse, to a third party. Fields, 174 F. Supp. 2d at 473
(citing Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Kelly v. Diocese of Corpus
Christi, 832 S.W.2d 88, 91 (Tex. App.-Corpus Christi 1992, writ dism'd w.o.j.)). 

1. Are the Words Defamatory?


 To be defamatory, words must be false. Padilla v. Carrier Air Conditioning, 67 F. Supp. 2d 650, 663 (E.D.
Tex. 1999) (citing Randall's Food Mkts., 891 S.W.2d at 646). The words also must refer to an ascertainable
person to be defamatory. Id. Words are defamatory if they tend to harm a person's reputation. Tex. Civ.
Prac. & Rem. Code Ann. § 73.001 (Vernon 1997); Einhorn v. LaChance, 823 S.W.2d 405,410-11 (Tex.
App.-Houston [1st Dist.] 1992, writ dism'd w.o.j.) (op. on reh'g). Words that expose a person to public
hatred, contempt, ridicule, or financial injury harm a person's reputation. LaChance, 823 S.W.2d at 410-11. 
Generally, there are two types of defamatory words: (1) defamation per se, or words that are actionable in
and of themselves, which does not require any allegation of special damages; and (2) defamation per quod, or
words that are actionable only on allegations and proof of special damages. Padilla, 67 F. Supp. 2d at 663
(citing Bayoud v. Sigler, 555 S.W.2d 913 (Tex. Civ. App.-Beaumont 1977, writ dism'd w.o.j.)); Gulf Constr.
Co. v. Mott, 442 S.W.2d 778, 783-84 (Tex. Civ. App.-Houston [14th Dist.] 1969, no writ). 

 Words may be defamatory per se if they are so obviously harmful to the person aggrieved that no proof of
their injurious effect is necessary to make them actionable. Shearson Lehman Hutton, Inc. v. Tucker, 806
S.W.2d 914, 921 (Tex. App.-Corpus Christi 1991, writ dism'd w.o.j.). Among the words characterized as
slanderous per se are those that injuriously affect one in one's office, profession, or occupation. Id.
Nonetheless, even if words tend to expose one to ridicule, hatred, or contempt, they are not actionable in and
of themselves unless they impute to one the commission of a crime, have an injurious effect on one's office or
business, or falsely or maliciously impute unchastity. Padilla, 67 F. Supp. 2d at 663 (citing Buck v. Savage,
323 S.W.2d 363 (Tex. Civ. App.-Houston [1st Dist.] 1959, writ. ref'd n.r.e.)).

 Whether words can be interpreted as defamatory is a question of law for the court. LaChance,
823 S.W.2d at 411 (citing Musser v. Smith Protective Serv., Inc.,723 S.W.2d 653, 654-55 (Tex. 1987)). The
court applies an objective standard by construing the words as a whole, in light of surrounding circumstances,
based on how a person of ordinary intelligence would perceive the words. LaChance, 823 S.W.2d at 411. If
the court determines that the words are ambiguous or of doubtful import, a factfinder should decide the words'
meaning and the effect of the words on an ordinary person. Id. 

2. What Is the Private or Public Status of the Plaintiff?


 The degree and burden of proof applied in a defamation case hinges on the status of the plaintiff as either a
private individual or a public figure. LaChance, 823 S.W.2d at 412. An injured private party who is not a
public official or public figure must prove that the defendant was negligent in making a defamatory statement. 
Id. at 413 (citing Durham v. Cannon Communications, Inc., 645 S.W.2d 845, 851 (Tex. App.-Amarillo 1983,
writ dism'd w.o.j.)). However, the threat of a defamation judgment can chill discussion of public issues. Thus,
to sustain a defamation cause of action, a public figure must prove the defendant acted with actual malice, not
merely negligence. N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). These standards apply equally
to media and non-media defendants. See Casso v. Brand, 776 S.W.2d 551, 554 (Tex. 1989) (plurality
opinion) ("We are reluctant to afford greater constitutional protection to members of the print and broadcast
media than to ordinary citizens. . . . Therefore, we join those states which have extended the New York
Timesstandard to defamation suits by public officials and public figures against non-media defendants."). 

 Alaniz, in the context of this summary-judgment proceeding, did not dispute he is a public figure. 
Accordingly, our analysis assumes that Alaniz will bear the burden of proving at trial that Hoyt acted with
actual malice. See Casso, 776 S.W.2d at 554.

 

B. The Law of Actual Malice


 Defamatory words are communicated with actual malice when the defendant knows the words are false or
recklessly disregards whether the words are false or not. Randall's Food Mkts., 891 S.W.2d at 646; Hagler v.
Proctor & Gamble Mfg. Co., 884 S.W.2d 771, 772 (Tex. 1994) (per curiam). Actual malice is a term of art
distinct from traditional common-law malice. Hagler, 884 S.W.2d at 771; Wal-Mart Stores, Inc. v. Lane,
31 S.W.3d 282, 291 (Tex. App.-Corpus Christi 2000, pet. denied). Actual malice does not include ill will,
spite, or evil motive. Hagler, 884 S.W.2d at 771; Lane, 31 S.W.3d at 291. Rather, "reckless disregard"
means "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to
the truth of [the] publication." Lane, 31 S.W.3d at 291 (quoting Hagler, 884 S.W.2d at 771-72); see
Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 666 (1989) ("[T]he actual malice
standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term."). 

1. The Burden of Proof for Actual Malice


 To show actual malice in the defamation context, the plaintiff must produce "clear and convincing evidence
that the defendant acted with a knowledge of falsity or with a 'high degree of awareness of . . . probable
falsity.'" Connaughton, 491 U.S. at 688 (quoting Garrison v. La., 379 U.S. 64, 74 (1964)); Bentley v. Bunton,
94 S.W.3d 561, 591 (Tex. 2002); see Casso, 776 S.W.2d at 558 (holding that public figure "must offer clear
and convincing affirmative proof to support a recovery" for defamation). Clear and convincing evidence is
defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established." In re G.M., 596 S.W.2d 846, 847 (Tex.
1980) (quoting State v. Addington, 588 S.W.2d 569 (Tex. 1979)). In a defamation case, the standard is
subjective: there must be sufficient evidence to permit the conclusion that the defendant actually had a "high
degree of awareness of . . . probable falsity."Belalcazar, 2003 Tex. App. LEXIS 1728, at *24-*25 (quoting
Connaughton, 491 U.S. 657 at 688). Accordingly, failure to investigate or verify information, without more,
cannot establish actual malice. Id. (citing Doubleday & Co., Inc. v. Rogers, 674 S.W.2d 751, 756 (Tex.
1984); Freedom Communications, Inc. v. Brand, 907 S.W.2d 614, 622 (Tex. App.-Corpus Christi 1995, no
writ)). 

 Although actual malice focuses on the defendant's subjective state of mind, a plaintiff can prove it through
objective evidence about the circumstances surrounding the alleged defamatory words. Turner v. KTRK
Television, Inc., 38 S.W.3d 103, 120 (Tex. 2000). Actual malice also may be proved by circumstantial
evidence of the defendant's state of mind. Id. Inconsistencies or doubts regarding the reliability or credibility
of the defendant's source of information do not amount to clear and convincing evidence of the defendant's
knowledge of the falsity of the words or that the defendant entertained serious doubts about their truth. Id. at
125. However, omission of critical facts that distorts the entire character of a communication raises an
inference that the defendant acted with actual malice. See Eastwood v. Nat'l Enquirer, Inc., 123 F.3d 1249,
1256 (9th Cir. 1997). 

 In the summary-judgment context, rule 166a permits the granting of summary judgment on the basis of
uncontroverted testimonial evidence of an interested witness if that evidence "is clear, positive and direct,
otherwise credible and free from contradictions and inconsistencies, and could have been readily
controverted." Tex. R. Civ. P. 166a(c). The supreme court has held that the phrase "could have been readily
controverted" does not simply mean that the movant's summary-judgment proof in a defamation case could
have been easily and conveniently rebutted. Casso, 776 S.W.2d at 558. Rather, the phrase means that the
testimony at issue is of a nature that can be countered effectively by opposing evidence. Id. If the credibility
of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, summary judgment is
inappropriate. Id. On the other hand, if the non-movant must produce, in all likelihood, independent evidence
to prevail, summary judgment may well be proper in the absence of controverting proof. Id. Thus, if a
defamation defendant's affidavit or deposition testimony establishes the defendant's subjective absence of
knowledge of the falsity of the challenged words and subjective absence of reckless disregard of their truth or
falsity, the plaintiff must controvert those statements to prevail. Id. 

2. The Standard of Review for Actual Malice


On Review of a Summary Judgment




 The clear-and-convincing standard of proof does not apply to review of summary-judgment proceedings in a
defamation case. Huckabee v. Time Warner Entm't Co., L.P., 19 S.W.3d 413, 423 (Tex. 2000). Instead, a
trial court's only duty at the summary-judgment stage - and this Court's only duty on reviewing a summary
judgment in a defamation case - is to determine if a material question of fact exists. Id. at 422. 

3. Application of the Law to the Summary-Judgment Evidence


 In both his no-evidence and traditional motions for summary judgment, Hoyt focused on the "actual malice"
element on which we assume, for purposes of this summary-judgment record, that Alaniz will bear the burden
of proof at trial. In the no-evidence portion of his motion, Hoyt specifically identified that Alaniz had no
evidence that Hoyt either made the statements with a "high degree of awareness of probable falsity" or that
Hoyt had "actual subjective doubt about the trustfulness [sic] of the statements." In reviewing the summary
judgment, we determine if Alaniz produced in response to Hoyt's no-evidence motion more than a scintilla of
evidence that Hoyt acted with actual malice, that is, if the evidence in the summary-judgment record "rises to a
level that would enable reasonable and fair-minded people to differ in their conclusions." Ortega,
97 S.W.3d 765, at *12 (quoting Moriel, 879 S.W.2d at 25). On the other hand, we take evidence favorable to
Alaniz as true in determining if Hoyt disproved in his traditional motion for summary judgment the
actual-malice element of Alaniz's defamation claim. See Ortega, 97 S.W.3d 765, at *11. We make all
reasonable inferences and resolve all doubts in Hoyt's favor. See id. 

 

a. Hoyt's No-Evidence Motion for Summary Judgment


 Alaniz generally complains in his first issue that the trial court erred in granting summary judgment for Hoyt. 
In issue eight, Alaniz asserts that the summary-judgment record contains more than a scintilla of evidence that
Hoyt knew or suspected that his statements about Alaniz, taken as a whole, could present a false and
defamatory impression. In issue nine, Alaniz maintains that the summary-judgment record contains more than
a scintilla of evidence that Hoyt knew or suspected that his statements that Alaniz had been "skimming"
interest could present a false and defamatory impression. Similarly, in issue ten, Alaniz asserts that the
summary-judgment record contains more than a scintilla of evidence that Hoyt knew or suspected that his
statements that Alaniz had "commingled" funds of Del Mar College with funds of Del Mar College Foundation
could present a false and defamatory impression.

 In response to Hoyt's no-evidence motion, Alaniz filed excerpts from the deposition of Lisa Anderson, a CPA
employed by the accounting firm of KPMG Peat Marwick, who prepared an internal control audit report,
dated February 4, 1998, of Del Mar College Agency accounts. Anderson testified she prepared an audit
report that informed the Del Mar College Board of Regents, among other findings, that KPMG's audit did not
disclose any evidence of criminal conduct such as theft or misappropriation, nor did the audit reveal that funds
of Del Mar Foundation were commingled with funds of Del Mar College. Minutes of a meeting held March 2,
1998 of the Audit Committee of the Del Mar College Board of Regents, also submitted by Alaniz in response
to Hoyt's no-evidence motion for summary judgment, confirmed both the substance of KPMG's findings as
disclosed in the audit report and that the audit report was presented to the Audit Committee on that date. 
Alaniz's summary-judgment affidavit established both that Hoyt was present at the March 2, 1998 Audit
Committee meeting when the KPMG audit report was presented and that Hoyt received a copy. 

 Alaniz also submitted as summary-judgment evidence a memorandum dated June 28, 1998 from Hoyt to
Dicianna that stated in part:

 Now that is it [sic] confirmed that Mr. Jose Alaniz has been "skimming" interest earnings on the checking
account away from agency accounts, please provide me, according to the Texas Open Records Act, all journal
entries and/or general ledger pages showing disbursements, transfer, and/or withdrawals. . . . 

Further, Alaniz's summary-judgment evidence established that Hoyt published the Dicianna memo to members
of the Del Mar College Board of Regents and to the Corpus Christi Caller-Times newspaper. 

 Moreover, Alaniz's summary-judgment affidavit established that during a Del Mar College faculty and
administrators meeting in July of 1998, Hoyt stated that Alaniz had been "skimming" interest from Del Mar
College Agency accounts and had improperly "commingled" funds of Del Mar College with funds of Del Mar
College Foundation. Also, Dicianna testified in his deposition that Hoyt continued to repeat, after completion
of the KPMG audit, statements about Alaniz "skimming" and "commingling" funds. 

 Finally, Stewart testified in her affidavit that during a meeting between Stewart, Hoyt, and Richard Armenta
(another Del Mar College colleague) on July 13, 1998, Hoyt repeated his statement that Alaniz was
"skimming." Stewart testified that after Armenta explained the meaning of skimming and cautioned Hoyt that
the term connoted stealing or theft, Hoyt reiterated that Alaniz was "skimming." Stewart also testified in her
affidavit that Hoyt repeated his statements in a meeting on August 12, 1998, between Stewart, Hoyt,
Armenta, Dicianna, and another academic colleague, after Stewart again had warned Hoyt that the words
Hoyt used in connection with Alaniz's performance of his financial duties for Del Mar College suggested a
crime had been committed and were legally actionable. 

 A defamation plaintiff can prove a defendant's subjective malicious state of mind through objective evidence
about the circumstances surrounding the alleged defamatory words as well as by circumstantial evidence. 
Turner, 38 S.W.3d at 120. Alaniz produced summary-judgment evidence that Hoyt persisted in repeating his
statements about Alaniz's "skimming" and "commingling" of funds: (1) after Hoyt received the KPMG audit
report absolving Alaniz of malfeasance; and (2) after at least two academic colleagues cautioned Hoyt that his
use of the term "skimming" connoted criminality. Accordingly, we find that Alaniz produced
summary-judgment evidence that raised the level of evidence in the summary-judgment record to the extent
"that would enable reasonable and fair-minded people to differ in their conclusions" as to whether Hoyt acted
with actual malice. See Ortega, 97 S.W.3d 765, at *11. We hold that Alaniz produced more than a scintilla
of evidence that Hoyt acted with actual malice. See id. We sustain Alaniz's eighth, ninth, and tenth issues. 

b. Hoyt's Traditional Motion for Summary Judgment


 In issue three, Alaniz asserts that a fact issue exists with regard to whether Hoyt knew or suspected that his
statements about Alaniz could be interpreted in a manner that would be defamatory and that the defamatory
impression presented by Hoyt's statements was false or misleading. Hoyt responds that his summary-judgment
evidence, even excluding his untimely affidavit in which he denied acting with actual malice, conclusively
showed that he believed in the truth of his assertions. We assume, without deciding, that Hoyt testified to a
subjective belief in the truth of his statements in the deposition excerpts timely submitted in support of his
traditional motion for summary judgment. Nonetheless, we have held that Alaniz presented more than a
scintilla of evidence that Hoyt acted with actual malice. Similarly, we find that Alaniz met his burden of
controverting any evidence of Hoyt's subjective belief in the truth of Hoyt's assertions. See Casso,
776 S.W.2d at 558. Taking evidence favorable to Alaniz as true, making all reasonable inferences, and
resolving all doubts, in his favor, we find that a fact issue exists with regard to whether Hoyt acted with actual
malice. See Ortega, 97 S.W.3d 765, at *11. We hold that Hoyt did not meet his burden of showing no
genuine issue of material fact. See id. 

 Further, objectively construing Hoyt's words as a whole in light of both the conclusions reached by the
KPMG audit report and Hoyt's repetition of the words after having received the audit report and after having
been cautioned by his academic colleagues about the injurious connotation of his words, we find that the
words "skimming" and "commingling" are of ambiguous or doubtful import in the context in which Hoyt used
the words. See LaChance, 823 S.W.2d at 411. Accordingly, in the absence on this record of any fact issue
that Hoyt made the statements Alaniz attributes to him, we hold that a factfinder should decide: (1) the
meaning of the words "skimming" and "commingling" as used by Hoyt in referring to Alaniz's performance in
Alaniz's office, profession, or occupation; and (2) any defamatory effect of the words on an ordinary person. 
See LaChance, 823 S.W.2d at 411; see also Shearson Lehman Hutton, 806 S.W.2d at 921. We sustain
Alaniz's third issue. 

V. CONCLUSION


 We sustain Alaniz's second issue as it relates to the untimeliness of Hoyt's summary-judgment affidavit. We
overrule Alaniz's second issue as it relates to the trial court's consideration of the deposition excerpts attached
to Hoyt's reply to Alaniz's response to Hoyt's motions for summary judgment. We sustain Alaniz's twelfth
issue as it relates to the trial court's striking of the Stewart affidavit and overrule it as it relates to the Moore
letter. We sustain Alaniz's eighth, ninth, and tenth issues that the trial court's grant of Hoyt's summary
judgment on no-evidence grounds was error. We sustain Alaniz's third issue that the trial court's grant of
Hoyt's summary judgment on traditional grounds was error. Accordingly, we also sustain Alaniz's first issue
asserting generally that the trial court erred in entering summary judgment for Hoyt. See Nat'l Union Fire Ins.
Co. v. John Zink Co., 972 S.W.2d 839, 845-46 (Tex. App.-Corpus Christi 1998, pet. denied) (citing Malooly
Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (1970)). We do not reach Alaniz's remaining issues. (6) See Tex.
R. App. P. 47.1. We reverse and remand this cause for further proceedings. 

 ERRLINDA CASTILLO

 
Justice



Opinion delivered and filed

this 8th day of May, 2003.



1. Retired Justice J. Bonner Dorsey assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. Within the motion for judicial notice, Alaniz moved for partial summary judgment on the ground that
Hoyt's statements regarding "skimming" were defamatory per se. Hoyt objected to Alaniz's attempt to assert
his own motion for summary judgment less than twenty-one days before the hearing scheduled on Hoyt's
motion. The record does not reflect an order from the court in that regard. Alaniz does not raise an issue on
appeal complaining of the trial court's denial of his cross-motion for summary judgment. Accordingly, we
review only the trial court's order granting Hoyt's motion for summary judgment. Similarly, Hoyt did not
object to the trial court's consideration, as part of Alaniz's response (filed the same day) to Hoyt's motion for
summary judgment, of the summary-judgment evidence attached by Alaniz to his motion for judicial notice. 
No written order excluded the materials from the summary-judgment record. Further, the materials attached
to Alaniz's motion for judicial notice were filed more than seven days before the summary-judgment hearing. 
See Tex. R. Civ. P. 166a(c). Therefore, we consider all of the materials filed by Alaniz on January 12, 2001,
including the materials attached to his motion for judicial notice, as part of the summary-judgment record. See
Util. Pipeline Co. v. Am. Petrofina Mktg., 760 S.W.2d 719, 723 (Tex. App.-Dallas 1988, no writ) (evidence
remains part of summary-judgment record unless order sustaining objection is reduced to writing, signed, and
entered of record). 

3. The court reporter's record reflects that the summary-judgment hearing took place January 23, 2001. 

4. The exhibit filed by Alaniz contains only the first page of the February 28, 1998 letter from Hoyt to John
Moore at the Texas State Board of Public Accountancy. The exhibit also does not include the referenced
enclosures. 

5. Nor did Hoyt present controverting evidence that: (1) he did not make any of the statements attributed to
him by Alaniz in Alaniz's second amended petition; or (2) he did not repeat the statements after he received in
March of 1998 an audit report absolving Alaniz of malfeasance. 

6. In particular, we do not reach Alaniz's thirteenth issue in which he challenges the trial court's denial of his
motion to take judicial notice of a definition of the word "skim." Hoyt argues that the definition of a word is
not a proper subject for judicial notice. We note that a trial court's decision in taking judicial notice is subject
to review under an abuse-of-discretion standard. See Houston Chronicle Publ'g Co. v. Hardy,
678 S.W.2d 495, 508 (Tex. App.-Corpus Christi 1984, no writ). Courts may take judicial notice of
"adjudicative facts." Tex. R. Evid. 201. Rule 201 further instructs that "a judicially noticed fact must be one
not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the
trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot
reasonably be questioned." Tex. R. Evid. 201(b). Further, we note that "adjudicative facts" are defined in the
context of administrative proceedings as: "Factual matters concerning the parties . . . as contrasted with
legislative facts which are general and usually do not touch individual questions of particular parties to a
proceeding." Black's Law Dictionary, p. 39 (5th ed.). For the proposition that a court may take judicial notice
of the definition of a word, Alaniz cites Allied Gen. Agency, Inc. v. Moody, 788 S.W.2d 601 (Tex. App.-
Dallas 1990, writ denied). In Moody, the trial court took judicial notice of the definitions of several words and
included them in the jury charge. Moody, 788 S.W.2d at 607. Thus, the Moody court did not use the
definitions as "[f]actual matters concerning the parties." See Black's, p. 39. We distinguish the circumstance
under which the court took judicial notice of definitions in Moody from this case, where Alaniz sought to
establish the defamatory nature of the word "skim" through judicial notice of one of the word's definitions. As
Hoyt pointed out to the trial court, the word "skim" has more than one definition. Where judicial notice of
one of a word's multiple definitions is sought in a defamation action in which usage of the word is in
controversy, we conclude that the definition of the word is a fact that is "subject to reasonable dispute." Tex.
R. Evid. 201(b). A fact issue is presented regardless of whether the trial court takes judicial notice of the
definitions. Accordingly, because of our holding that fact issues preclude summary judgment, we do not
decide if the trial court abused its discretion in denying Alaniz's motion to take judicial notice of one of the
definitions of the word "skim."