NUMBER 13-05-249-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

ANTHONY PIZZITOLA AND LYDIA INEZ BILTON,          Appellants,

 

                                           v.

 

HOUSTON
INDEPENDENT SCHOOL DISTRICT,               Appellee.

 

 

 

          On appeal from the County
Civil Court at Law No. 3

                            of Harris
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

        Before Chief Justice Valdez and Justices Rodriguez
and Castillo

                        Memorandum Opinion by Justice Castillo

 








Appellee, Houston Independent School District
("HISD"), initiated the underlying condemnation proceeding in
November 2002 to acquire title to property of appellants, Anthony Pizzitola and
Lydia Inez Bilton ("Pizzitola"), in order to obtain additional space
and construct buildings for an HISD school. 
The trial court granted a traditional motion for summary judgment in
favor of HISD, severed Pizzitola's declaratory judgment action to repurchase
the property, and entered judgment awarding the property to HISD and
compensation to Pizzitola.  Pizzitola's
motion for new trial was overruled by operation of law and this appeal
ensued.  We affirm the judgment as
modified.  Tex. R. App. P. 43.2(b). 


I.  Background

Beginning in 1997, HISD conducted a comprehensive assessment
of its various facilities to determine repair or replacement needs.  It concluded that Gregory Lincoln Education
Center ("Gregory Lincoln"), a fine arts magnet school for
kindergarten through eighth grade students ("K-8"), required in
excess of $7,000,000 in repairs.  A
follow-up study in 2002 confirmed the needs for extensive repairs, which by
then exceeded $10,000,000 and approached costs for new construction.  HISD also determined that Gregory Lincoln,
originally designed as a junior/senior high school, had several functional
deficiencies and did not well serve the needs of its K-8 student body.  It had insufficient space for either athletic
activities or parking;[1]
square footage for the entire campus was inadequate and considerably less than
that of other schools. 








In 1998, HISD voters approved a large bond package
for renovation or reconstruction of various HISD facilities.  Evidence reflected that after all projects
originally planned for that bond program were completed, some monies were left
over and available to address the next list of priorities.  These included the need for additional space
to expand the Gregory Lincoln school campus. 
In September 2000 and April 2001, the HISD Board of Trustees authorized
negotiations with various property owners, including Pizzitola, to acquire
additional land next to Gregory Lincoln.[2]  Contemporaneously, HISD explored efforts to
use an expanded Gregory Lincoln campus to also construct a new building for
HISD's magnet High School for Performing and Visual Arts ("HSPVA").[3]  In 2002, HISD voters approved an additional
bond package, a portion of which was earmarked for construction of an entirely
new Gregory Lincoln school building as well as a new HSPVA.  













On September 13, 2001, the Board adopted a
resolution authorizing exercise of the right of eminent domain and condemnation
of Pizzitola's property, if negotiations failed, for the public purpose of
securing "grounds for a public school building or buildings and
appurtenances or additions thereto, and playgrounds in connection
therewith."  Negotiations to
purchase Pizzitola's property failed, and the underlying condemnation suit to
acquire his 0.2097 acre tract was initiated by HISD in November 2002.  The trial court appointed Special
Commissioners, who awarded title to HISD and assessed market value for the
property at $317,000.  Those monies were
deposited into the registry of the court. 
An order and writ of possession to the property pendente lite issued in
favor of HISD in January 2003.[4]  Pizzitola filed a plea to the jurisdiction,
alleging failure to exhaust all administrative remedies and challenging
jurisdiction.  Pizzitola also challenged
sufficiency of the compensation award. 
HISD filed a traditional motion for partial summary judgment, attaching
evidence to support its position that it had the authority to acquire the
property, acquisition was for a public purpose, the decision to acquire was not
arbitrary or capricious, and proper procedures had been followed.  On June 5, 2003, the trial court granted the
motion for partial summary judgment and ordered that any trial be limited to
the question of the property's fair market value.  Pizzitola responded by filing objections and
exceptions, a petition for declaratory judgment of repurchase, an amended plea
to the jurisdiction, and a motion for reconsideration.  The motion to reconsider was denied.  Following a trial, the jury returned a
verdict on August 12, 2004, that the fair market value of the property was
$375,000.  HISD had also moved to sever
Pizzitola's declaratory judgment action to repurchase the property.  The order of severance was entered December
20, 2004, as was the final judgment, which found that all legal prerequisites
for the condemnation were satisfied, the trial court had jurisdiction, title to
the property vested in HISD, and Pizzitola was entitled to recover $375,000,[5]
as well as pre- and post-judgment interest. 
All costs of court were assessed against HISD.  Pizzitola filed a motion for new trial in
January 2003, which was overruled by operation of law.  This appeal ensued.  

II.  Issues on
Appeal

Pizzitola raises five issues on appeal.  In issues one, two, and three, he contends
that the trial court erred in granting the motion for partial summary judgment
because (1) all legal prerequisites for the condemnation had not been satisfied
and the trial court lacked jurisdiction, (2) HISD had acted in an arbitrary and
capricious manner, and (3) it was an abuse of discretion to conclude the taking
was appropriate or necessary.  In issues
four and five, Pizzitola challenges the order severing his claim for
declaratory judgment to repurchase the property because (1) the legal right to
repurchase is inextricably intertwined with the issue of the taking, and (2)
severance prevents entry of a judgment determining all title issues for the
property.  

III.  Summary
Judgment

A.  Standard
of Review








The function of a
summary judgment is to eliminate patently unmeritorious claims and defenses,
not to deprive litigants of the right to a jury trial.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64,
68 (Tex. 1972); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003,
no pet.).  We review de novo a trial
court's order granting a traditional motion for summary judgment.  Alaniz, 105 S.W.3d at 345; Ortega
v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.BCorpus Christi 2003,
no pet.) (op. on reh'g).  The
movant bears the burden of showing both that no genuine issue of material fact
exists, and that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); Alaniz, 105 S.W.3d at 345.  In deciding whether there is a genuine issue
of material fact, we take evidence favorable to the non‑movant as
true.  Alaniz, 105 S.W.3d at
345.  We make all reasonable inferences
and resolve all doubts in favor of the non‑movant.  Id. 
Summary judgment for a defendant is proper if the defendant disproves at
least one element of each of the plaintiff's claims or affirmatively
establishes each element of an affirmative defense to each claim.  Id. 
A non‑movant has the burden to respond to a traditional summary
judgment motion if the movant conclusively (1) establishes each element of its
cause of action or defense, or (2) negates at least one element of the non‑movant's
cause of action or defense.  Alaniz,
105 S.W.3d at 345; Ortega, 97 S.W.3d at 771. 

B.  Condemnation Procedures 








Section 11.155 of the
Texas Education Code provides that an independent school district may, by
exercise of the right to eminent domain, acquire title to real property for the
purpose of securing sites on which to construct school buildings, or for any other
purpose necessary for the district.  Tex. Educ. Code Ann. ' 11.155(a) (Vernon
1996).  A district court may determine
all issues, including the authority to condemn property and assess damages, in
any proceeding for eminent domain involving a political subdivision of the
state.  Tex.
Prop. Code Ann. ' 21.003 (Vernon 2004).


The procedure is
initiated by filing a petition for condemnation which, among other things, must
describe the property to be condemned and the purpose for which it is
intended.  Id. ' 21.012.[6]  The trial court then appoints three
disinterested property owners as special commissioners to assess the damages
due to the condemnee.  Id. ' 21.014.  A hearing shall be scheduled by the
commissioners at the earliest practical time. 
Id. ' 21.015.  Up until the time of the special
commissioners' award, the proceedings are considered to be administrative.  Amason v. Natural Gas Pipeline Co.,
682 S.W.2d 240, 241-42 (Tex. 1984).  A party
is entitled to appeal the findings of the special commissioners by filing a
written statement of objections and grounds therefor with the trial court.  Tex.
Prop. Code Ann. ' 21.018 (Vernon
2004).  Upon the filing of objections, the award of the special commissioners
is vacated and the administrative proceeding converts into a normal pending
cause in the trial court, with the condemnor as plaintiff and condemnee as
defendant.  Id.; Amason,
682 S.W.2d at 242.  

C.  Jurisdiction
of the Trial Court








By his first issue, Pizzitola contends that proper procedures were not
followed prior to the filing of the petition because the school board failed to
issue a
resolution reflecting that the taking was for the convenience and necessity of
the public and to serve a specific public use. 
In particular, he argues that because no designated bond funds were then
available, HISD had no power "to take on the date of taking" and, consequently,
the trial court had no jurisdiction over the matter.[7]


HISD's petition, filed
in November 2002, reflects that a resolution, adopted at a duly noticed Board
meeting, declared the necessity of acquiring by purchase or condemnation title
to the 0.2087 acre parcel belonging to Pizzitola.  The petition states that "the Property
will be used for school purposes, i.e. additional space for school
facilities and/or construction of buildings for an HISD school."  HISD's motion for partial summary judgment
attached the affidavit of Leonard Sturm, Deputy Superintendent for Finance and
Business Services for HISD, setting forth the rationale for the acquisition,
delineating and expanding on the public purposes to be served, detailing the
decision process and deliberation of the HISD Board, and attaching a copy of
the HISD resolution dated September 13, 2001. 
The resolution reflects:

WHEREAS, the Board of
Education of the [HISD] has declared the necessity of acquiring by purchase or
condemnation the fee simple title to the following described real property for
a public purpose, namely, for grounds for a public school building or buildings
and appurtenances and additions thereto, and playgrounds in connection
therewith . . . .

 

The
motion also attached the affidavit of Kevin Hoffman, a member of the HISD
Board, confirming the Board's action on that date and that the decision was
reached after full consideration and deliberation.  








The
description of intended use for the condemned property as being for
"school purposes" is sufficiently specific to confer jurisdiction on
the trial court.  Lin v. Houston Cmty.
Coll. Sys., 948 S.W.2d 328, 334 (Tex. App.BAmarillo 1997, writ denied).  Lin involved the same statute in issue
here.  Id. at 334-35.  Lin contended that the trial court lacked
jurisdiction because the college had not authorized the condemnation petition
before it was filed.  Id.  The court concluded that averments in the
college's petition were sufficient to invoke jurisdiction of the trial
court.  "The question whether the
bringing of the suit was authorized is not jurisdictional, and if authorization
is challenged, may be decided by the court in usual litigation
procedures."  Id. at
335.  We conclude the petition was
sufficient to confer jurisdiction upon the trial court.  We overrule Pizzitola's first issue on
appeal.   

D.  Necessity and "Arbitrary and Capricious"

Pizzitola also contends that HISD
acted in an arbitrary and capricious manner (issue two) and abused its
discretion in determining the necessity of taking the property (issue
three).  








"Where
a statute, such as this one, does not require a distinct showing of necessity,
the determination by the condemnor of the necessity for acquiring the property
is conclusive, absent fraud, bad faith, abuse of discretion, or arbitrary and
capricious actions."  Id. at
337 (citing Housing Auth. of Dallas v. Higginbotham, 143 S.W.2d 79, 88
(Tex. 1940)); see Coastal Indus. Water Auth. v. Celanese Corp. of
Am., 592 S.W.2d 597, 600 (Tex. 1979) ("the legislature's declaration
that a specific exercise of eminent domain is for public use is conclusive, and
the condemnation proceedings are limited to a determination of the amount to be
paid to acquire that use.").  

HISD
attached to its motion for partial summary judgment two affidavits setting forth
the means by which it concluded that the taking was appropriate, necessary, and
in furtherance of a bona fide public purpose.[8]  Although Pizzitola points to specific case
law, none of the cases cited support his argument that specific funds had to
have been allocated before the taking could have been authorized by HISD.  The law provides only that a taking may not
be "arbitrary and capricious." 


In many respects the
words arbitrary and capricious are synonymous. 
The word capricious means freakish, whimsical, fickle, changeable,
unsteady, and arbitrary.  Arbitrary is
defined as fixed or done capriciously or at pleasure; not founded in the nature
of things; non‑rational; not done or acting according to reason or
judgment; depending on the will alone; tyrannical; despotic. 

 

Webb v. Dameron, 219 S.W.2d 581, 584
(Tex. Civ. App.BAmarillo 1949, writ
ref'd n.r.e.) (citations omitted).  Where
there is room for two opinions, action is not arbitrary or capricious when
exercised honestly and upon due consideration however much it may be believed
that an erroneous conclusion was reached. 
Id.  Further, the courts
afford a broad discretion to those in whom the power of eminent domain is
vested.  Id. 








The
objecting party bears the burden to show that an action is arbitrary or
capricious.  Austin v. City of Lubbock,
618 S.W.2d 552, 555 (Tex. Civ. App.BAmarillo 1981), rev'd
on other grounds, 628 S.W.2d 909, 910 (Tex. 1982) (concluding the property
owners failed to meet that burden). 

In order for there to
be a judicial issue, the condemnee must plead and prove that the [district's]
act was founded in fraud or was arbitrary and capricious.  It could not be said that condemnee has met
the requisites of proof by merely introducing facts and inferences showing that
alternate plans might be feasible or better adapted to the project sought to be
accomplished which would not require his property, that the project was not essential
or necessary, or that incident thereto the condemning authority might reap a
profit.  In such instances questions as
to the necessity of taking the land sought to be condemned are concluded when
the applicant for condemnation, acting within the scope of its authority,
determines its use is necessary.  The
reason for this rule is that if it were otherwise one jury might hold on
competent evidence that land in question in the suit (a constituent part of the
whole of a larger amount necessary to the accomplishment of the objective of
the condemning authority) was not necessary to such purposes and the
accomplishments of an entire project destroyed because of the inability to
obtain the small part of land which made the subject of the particular
condemnation suit.

 

Wagoner v. City of
Arlington,
345 S.W.2d 759, 763 (Tex. Civ. App.BFort Worth 1961, writ
ref'd n.r.e.).  Further, it is not
arbitrary or capricious to take action based on a reasoned prediction of future
demand or need.  See Anderson v.
Clajon Gas Co., 677 S.W.2d 702, 705 (Tex. App.BHouston [1st Dist.]
1984, no writ).  "Appellants'
contention that appellees' 'future use' does not fulfill the requirement of a
public necessity, is not supported by Texas case law."  Id. 


We
conclude that HISD articulated a reasonable and necessary public purpose for
the taking, and that Pizzitola failed to satisfy his burden to show that HISD
acted in an arbitrary or capricious manner. 
See Austin, 618 S.W.2d at 555. 
We overrule Pizzitola's second and third issues.








IV.  Severance

A.  Standard of Review

Severance
of claims under the Texas Rules of Civil Procedure rests within the sound
discretion of the trial court.  Liberty
Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996) (orig.
proceeding) (citing Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793
S.W.2d 652, 658 (Tex. 1990); Hamilton v. Hamilton, 280 S.W.2d 588, 591
(Tex. 1955)); see also Tex. R.
Civ. P. 41.  In reviewing a trial court decision under an
abuse of discretion standard, we determine whether the trial court acted
without reference to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985).  The
exercise of discretion is within the sole province of the trial court, and we
may not substitute our discretion for that of the trial judge.  Johnson v. Fourth Ct. App., 700 S.W.2d
916, 918 (Tex. 1985).  Rather, an abuse
of discretion occurs only when the trial court reaches a decision that is
"so arbitrary and unreasonable as to amount to a clear and prejudicial
error of law."  Id. at
917.  

B.  Analysis

A
trial court properly exercises its discretion in severing claims when (1) the
controversy involves more than one cause of action, (2) the severed claim is
one that could be asserted independently in a separate lawsuit, and (3) the
severed actions are not so interwoven with the other claims that they involve
the same facts and issues.  Liberty
Nat'l, 927 S.W.2d at 629; Guaranty Fed., 793 S.W.2d at 658.








Subsequent
to the transfer of the property to HISD pendente lite and the trial court's
ruling in favor of HISD on the motion for partial summary judgment, Pizzitola
filed a petition for declaratory judgment to repurchase the property.  Pizzitola argues that this claim is
"inextricably linked" to the issue of the "taking" (issue
four), and that the severance prevents the effective entry of a judgment
determining all title issues for the property (issue five).  We disagree. 


A
right to repurchase arises under section 21.023 of the property code, which
provides that a governmental entity exercising eminent domain shall advise the
property owner of his entitlement to repurchase the property in the event that
the public use for which the property was acquired is canceled before the tenth
anniversary date of the acquisition.  Tex. Prop. Code Ann. ' 21.023 (Vernon 2004).[9]  Pizzitola argues that HISD is not an excluded
entity under the statute, that the property was acquired for a "public
use," and he discusses when title vested in HISD.  He argues that acquisition did not occur until
final judgment was entered and all sums paid. 








However,
at no point does Pizzitola acknowledge that the right to repurchase does not
arise until "the public use for which the property was acquired is
canceled."  Id.  Such a cancellation has clearly not yet
occurred.  Logically, there can be no
"splitting" of a cause of action, such as Pizzitola urges, where the
cause of action has not yet arisen.  Cf.
Duncan v. Calhoun County Navigation Dist., 28 S.W.3d 707, 711 (Tex. App.BCorpus Christi 2000,
pet. denied) (concluding only that the issues of "right to take" and
"just compensation" are each encompassed within a condemnation
proceeding and may not be severed from each other).  Here, the issues of "right to take"
and "just compensation" were not "split" from each
other.  We will not expand analysis
applicable to that circumstance to encompass a right associated with an event
which has not yet occurred.  We overrule
Pizzitola's fourth and fifth issues on appeal, except to the extent that
Pizzitola urges his entitlement to have the judgment reflect his rights and
HISD's obligations under the statute. 

Pizzitola
argues and HISD concedes that Pizzitola is entitled to modification of the
final judgment to reflect notice of his statutory right to repurchase, as set
forth in section 21.023 of the property code. 
Tex. Prop. Code Ann. ' 21.023 (Vernon 2004).[10]  In light of the position of the parties and
in the interests of judicial economy, we order that the judgment of the court
be modified to include the following language:

Pursuant
to section 21.023 of the Texas Property Code, Anthony Pizzitola and Lydia Inez
Bilton are notified that they, their heirs, successors, or assigns are entitled
to repurchase the Subject Property, in the event that prior to the tenth
anniversary of the date of acquisition the public use for which the property
was acquired through eminent domain is cancelled.  The public use for the Subject Property is
defined as "grounds for a public school building or buildings and
appurtenances or additions thereto, and playgrounds in connection therewith."  The repurchase price is the fair market value
of the Subject Property determined at the time the public use is
cancelled.  

 

 








V.  Conclusion

We
overrule Pizzitola's issues on appeal. 
We affirm the judgment of the trial court as modified.  Tex.
R. App. P. 43.2(b).  

 

ERRLINDA CASTILLO

Justice

 

Memorandum Opinion
delivered and filed

this 18th day of May,
2006.

 











[1]
Because it is a magnet school, most students do not walk but instead must be
transported to school, exacerbating the parking problem and the absence of
adequate bus lanes.  





[2] In
September 2000 and April 2001, HISD authorized negotiations to purchase a total
of nine acres, which included Pizzitola's parcel.  





[3] HISD also apparently was
approached by Friends of HSPVA in 1998 with a proposal that if it could raise
$15 million, HISD would build a new HSVPA on the property being added to the
campus of Gregory Lincoln.  The
non-binding offer was accepted.  





[4] The trial court has this authority
pursuant to section 21.021 of the Texas Property Code.  Tex.
Prop. Code Ann. ' 21.021 (Vernon 2004).  





[5] The amount of this award is not
challenged on appeal.  





[6] The condemnor must also have
attempted to reach an agreement with the property owner as to damages, and then
assert in the petition the inability to reach such agreement.  Tex.
Prop. Code Ann. ' 21.012 (Vernon 2004) 





[7] Pizzitola also argues that the
nonbinding offer of the Friends of HSVPA had not, as of the date of the taking,
resulted in the contribution of any cash monies.





[8] Even if necessity were deemed to
be a requisite element of HISD's burden, evidence submitted with its motion for
partial summary judgment was sufficient to satisfy such a burden.  





[9] This statute was passed while the
underlying case was pending and is effective as to property acquired by a
governmental entity for a public use on or after the effective date of January
2, 2004.  Tex. Prop. Code Ann. ' 21.101 (Vernon Supp. 2005); see Act of June 1,
2003, 78th Leg., R.S. ch. 1307, ' 3, 2003 Tex. Gen. Laws 4739, 4740.  In its judgment of December 20, 2004, the
trial court vested title to the property in HISD. 





[10] HISD states that, initially,
applicability of the statute was in question.