NUMBER 13-06-00478-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


COY GILLENWATER, Appellant,


v.
 


FORT BROWN VILLAS III, 

CONDOMINIUM ASSOCIATION, INC., 

D/B/A FORT BROWN CONDOSHARES 

AND LRI MANAGEMENT, INC., Appellees.

 


On appeal from the 138th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION ON MOTION FOR REHEARING (1)


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion on Motion for Rehearing


by Chief Justice Valdez

 Appellant, Coy Gillenwater sued Fort Brown Villas III Condominium Association,
Inc., d/b/a Fort Brown Condoshares and LRI Management, Inc. ("Fort Brown"), appellees,
alleging a premises liability claim. The trial court struck one of Gillenwater's expert
witness's affidavits and granted Fort Brown a no-evidence summary judgment. Gillenwater
asserts two issues complaining that the trial court erred (1) by not considering its expert's
affidavit in the summary judgment proceeding, and (2) by granting Fort Brown a summary
judgment because a genuine issue of material fact existed. We reverse and remand.

I. BACKGROUND Gillenwater rented a condominium at Fort Brown. The condominium complex's
amenities included an on-site swimming pool, wooden deck, and lounge chairs. After
swimming, Gillenwater sat on one of the chaise lounge chairs by the pool. As he sat down,
the lounge chair broke and caught Gillenwater's right ring finger. Part of his ring finger was
severed and fell between the wooden boards of the deck. The severed portion of
Gillenwater's finger could not be attached to the rest of his finger. Gillenwater filed a
premises liability suit. 

 The parties entered into an agreed scheduling order, which was amended by
several written agreements. As amended, Gillenwater's deadline for the designation of
expert witnesses was September 22, 2005; Fort Brown's deadline was November 18,
2005. The deadline for completing all discovery was March 6, 2006. 

 On February 10, 2006, Fort Brown filed a no-evidence motion for summary
judgment asserting that Gillenwater had no evidence to support two elements of a
premises liability claim. In its motion, Fort Brown argued that there was no evidence
regarding (1) whether the chair's condition posed an unreasonable risk of harm, and (2)
that Fort Brown knew or reasonably should have known of the danger. 

 Gillenwater responded to Fort Brown's motion on March 2, 2006. He argued that
there was enough evidence to overcome a summary judgment. In addition to Gillenwater's
response, several other documents were attached, including: (1) the deposition of Frank
Collins, the manager at Fort Brown, (2) Gillenwater's deposition, and (3) the cirriculum vitae
and affidavit of Paul Carper, a professional engineer. In his deposition, Collins
acknowledged that Fort Brown employees were supposed to wash, wipe down, and inspect
the lounge chairs six days a week because of the corrosive effect of the swimming pool's
chlorine. Gillenwater's deposition testimony states that he did not notice the chairs were
damaged the day of his injury, but he returned to inspect the chair afterwards and saw a
broken "rung."

 Carper reviewed photographs of the suspect chair, the depositions of Gillenwater
and Collins, and photographs of Gillenwater demonstrating how he was positioned in the
chair at the time of the injury. Carper noted that the chair contained tube framing that was
welded together. He observed that four welded joints on the chair's side framing had
failed. Carper opined that:

Since the weld was broken where Mr. Gillenwater's right hand was
positioned, a significant pinch point and ragged edge was present about a
hold hole that remained where a portion of the rectangular tubing had torn
away at the weld interface. Significant movement between the seating
surface and main frame of the chair was possible because of the four (4)
failed side welds.


Carper concluded that Gillenwater's injury was caused by the movement of the chair's
seating surface relative to the frame of the chair while his finger was positioned in the area
of a broken weld. 

 Fort Brown filed written objections to Carper's affidavit. Fort Brown argued that
Carper's affidavit should be stricken because it represented an untimely designation of an
expert witness and contained conclusory statements. Gillenwater responded to Fort
Brown's objections by reasoning that Carper's affidavit provided competent summary
judgment evidence as recognized by this Court and other courts. A hearing on the
summary judgment motion was held on March 9, 2006. On August 15, 2006, the trial court
entered an order striking Carper's affidavit, granting Fort Brown's no-evidence motion for
summary judgment, and rendering a take-nothing judgment. This appeal ensued.

II. DISCUSSIONA. Issue 1: Striking Carper's Affidavit

 In his first issue, Gillenwater argues that the trial court erred in striking the affidavit
of his expert witness, Carper. The trial court's decision to strike Carper's affidavit is
governed by an abuse of discretion standard. See Alvarado v. Farah Mfg. Co., 830
S.W.2d 911, 914 (Tex. 1992). The test is whether the trial court acted without reference
to any guiding principles. Mack v. Suzuki Motor Corp., 6 S.W.3d 732, 733 (Tex.
App.-Houston [1st Dist.] 1999, no pet.). 

 In the instant case, Fort Brown's basis for striking Carper's affidavit was that it
represented an untimely designation of an expert witness and that Carper's statements
were conclusory. We have already held that the rules regarding discovery
supplementation do not apply to the comprehensive framework of summary judgment
proceedings. Alaniz v. Hoyt, 105 S.W.3d 330, 340 (Tex. App.-Corpus Christi 2003, no
pet.); Gandara v. Novasad, 752 S.W.2d 740, 743 (Tex. App.-Corpus Christi 1988, no writ). 
The trial court, therefore, could not have struck Carper's affidavit based upon Fort Brown's
timely designation argument.

 We next consider whether Carper's affidavit was conclusory. "A conclusory
statement "is one that does not provide the underlying facts to support the conclusion."
See Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex. App.-Houston [1st Dist.] 1997, no
writ) (citing Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam));
see AMS Constr. Co. v. Warm Springs Rehab. Found., 94 S.W.3d 152, 157 (Tex. App.-
Corpus Christi 2002, no pet.). Fort Brown objected to the following statements as being
conclusory:

(1) Mr. Gillenwater's finger injury was caused by the movement of the
chair seating surface relative to the frame of the chair while his finger
was positioned in the area of the broken weld;


* * * 


(3) The two broken welds on each side of the chair frame were easily
visible; the defendants either knew or should have known of the
dangerous condition of the chair.


The two statements that Fort Brown asserts are conclusory are supported the following
factual statements found in Carper's affidavit:

The weight of a person sitting on the seat of the chair would create a
downward force on the seat webbing frame and round tubing relative to the
sides of the chair frame. Since the weld was broken where Mr. Gillenwater's
right hand was positioned, a significant pinch point and ragged edge was
present about a hold that remained where a portion of the rectangular tubing
had torn away at the weld interface. Significant movement between the
seating surface and main frame of the chair was possible because of the four
(4) failed side welds. A chair in good condition would not have movement in
the area where Mr. Gillenwater had his hand positioned at the time of the
injury.


Additionally, Carper stated that the chair had a fifth weld that had failed and that this weld
was "visible from beneath the chair." The statements that Fort Brown finds objectionable
are supported by Carper's scientific observations. We hold that they are not conculsory
and, therefore, that the trial court should not have struck Carper's affidavit. Gillenwater's
first issue is sustained.

B. Issue 2: The No-Evidence Summary Judgment

 By his second issue, Gillenwater contends that the trial court erred in granting Fort
Brown's no-evidence motion for summary judgment because a genuine issue of material
fact existed. 

 In reviewing a no-evidence summary judgment, we ascertain whether the
nonmovant produced summary judgment evidence of such probative force as to raise a
genuine issue of fact as to the essential elements attacked in the no-evidence motion.
Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 206-08 (Tex. 2002). A no-evidence
summary judgment is improperly granted when the respondent brings forth more than a
scintilla of probative evidence raising a genuine issue of material fact. King Ranch, Inc.
v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). The evidence amounts to more than a
mere scintilla when it "rises to a level that would enable reasonable and fair-minded people
to differ in their conclusions." Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997). When reviewing a no-evidence motion for summary judgment, we review the
evidence in the light most favorable to the respondent against whom the no-evidence
summary judgment was rendered, disregarding all contrary evidence and inferences if
reasonable jurors could. City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005). 
When, as here, the trial court's order does not specify the grounds upon which it relied, we
must affirm if any ground is meritorious. FM Props. Operating Co. v. City of Austin, 22
S.W.3d 868, 872 (Tex. 2000).

 The elements of a premises liability claim are: (1) actual or constructive knowledge
of some condition on the premises by the owner/operator; (2) the condition posed an
unreasonable risk of harm; (3) the owner/operator did not exercise reasonable care to
eliminate or reduce the risk; and (4) the owner/operator's failure to use such care
proximately caused the plaintiff's injuries. Keetch v. Kroger Co., 845 S.W.2d 262, 264
(Tex. 1992). Fort Brown's no-evidence summary judgment motion contends that
Gillenwater failed to present any evidence of the first two elements of a premises liability
claim. We disagree.

 There is some evidence that Fort Brown had actual or constructive knowledge of the
lounge chairs's condition. Collins stated in deposition testimony that Fort Brown
employees were supposed to wash, wipe down, and inspect the lounge chairs six days a
week. Carper's affidavit averred that the fifth failed weld was visible from beneath the
chair. Fort Brown employees, therefore, could have seen the broken weld during one of
the routine inspections. Furthermore, Carper's affidavit, when viewed in the light most
favorable to Gillenwater, amounts to some evidence that the chair posed an unreasonable
risk of harm. Carper stated that the chair that injured Gillenwater had movement that a
chair in good condition would not have had and that the chair had a "significant pinch point
and ragged edge."

 We find that a fact issue exists concerning the first two elements of a premises
liability claim. We hold that the trial court erred in granting Fort Brown's no-evidence
motion for summary judgment. Gillenwater's second issue is sustained.

C. Response to the Dissent

 The dissent contends that the discovery rules apply to summary judgment
proceedings and that there is a conflict in our court's jurisprudence. The dissent premises
its argument on the fact that we now have ascertainable discovery deadlines and that
ascertainable deadlines give courts license to impose discovery sanctions on summary
judgment evidence. The dissent makes textual and policy arguments for why discovery
sanctions should apply to summary judgment proceedings. See Tex. R. Civ. P. 193.6. We
believe both of the dissent's arguments are flawed and that there is no conflict within this
court on how we review summary judgments.

 First, the dissent inordinately believes that the term "discovery" as used in the
summary judgment rule means "discovery sanctions." We, on the other hand, prefer to
plainly read the rule. The dissent's textual argument is that the no-evidence summary
judgment rule is linked to the discovery rules - and its sanctions - because it begins with
the phrase "[a]fter adequate time for discovery . . . ." Gillenwater, No. 13-06-478-CV, 2007
Tex. App. LEXIS ________ *__ (Tex. App.-Corpus Christi Nov. 1, 2007, no pet. h.) (J.
Vela dissenting) (citing Tex. R. Civ. P. 166a(i)). The dissent also points to the 1997
comment to the summary judgment rule as a justification for its position. It, in part, reads:

A discovery period set by pretrial order should be adequate opportunity for
discovery unless there is a showing to the contrary, and ordinarily a motion
under paragraph (i) would be permitted after the period but not before.


Tex. R. Civ. P. 166a, cmt. 1997. Both of the dissent's citations speak to the timing of a
motion for summary judgment, not to the incorporation of discovery sanctions. Contrary
to the dissent's apparent belief, the summary judgment rule is whole on its own. It contains
expert testimony guidelines, timing deadlines, and bad faith punishments. See Id. 166a(c),
(d) & (h). Should the supreme court have chosen to incorporate discovery sanctions into
the summary judgment rule, it could have done so just as clearly as the rule's other
provisions.

 Second, the dissent's policy argument is that the summary judgment rule and
discovery rules are "[b]oth procedural rules meant to expeditiously dispose of cases" and
should be read in conjunction. Gillenwater, No. 13-06-478-CV, 2007 Tex. App. LEXIS
________ *__ (Tex. App.-Corpus Christi Nov. 1, 2007, no pet. h.) (J. Vela dissenting). 
This argument begs the question, "Which procedural rules are designed to delay the
disposition of cases?" By the dissent's loose logic any two statutes or rules could be
grafted together to satisfy any end in the name of expeditious justice. The dissent's
sophistry is exactly why we do not change procedural rules through the common law. See
generally, State Dep't of Highways & Public Transp. v. Payne, 838 S.W.2d 235, 241 (Tex.
1992) (discussing the procedural rules governing jury charges and cautioning that rules
changes must await completion of a rule drafting process rather than revision by common
law). 

 The real issue before us is whether the trial court erred in striking the plaintiff's
affidavit from the summary judgment record. We have held that the affidavit was
improperly struck because the rules regarding discovery supplementation do not apply to
the comprehensive framework of summary judgment proceedings. The dissent chooses
to recast the issue into whether the affidavit's author would ultimately be able to testify at
trial. It would judicially graft a new rule into the summary judgment scheme merely
because the summary judgment rule mentions the word "discovery," and applying
discovery sanctions to summary judgment proceedings is an easy way to usher cases out
of the courthouse door. We will not change our review of summary judgments without a
compelling reason, and the dissent has not offered one. See John v. Fuselier, 83 S.W.3d
892 (Tex. App.-Texarkana 2002, no pet.) (criticizing a holding similar to the dissent's
position as a change in reviewing summary judgments without a compelling reason). 

 The dissent also accuses us of creating a conflict within our own court's case law. 
It argues that dicta in Soto v. Drefke, No. 13-03-301-CV, 2005 Tex. App. LEXIS 1831, *7
n.9 (Tex. App.-Corpus Christi Mar. 2005, pet. denied) (mem. op., not designated for
publication), conflicts with this court's decision in Alaniz. The two cases are distinct
because they deal with different issues. The central issue in Soto was whether the trial
court abused its discretion in not granting a continuance. Id. at *8. The central issue in
this case is the trial court's discretion in striking an affidavit offered by the nonmovant. 
Because Soto and Alaniz resolve different issues, we do not see a conflict.

 III. CONCLUSION

 The judgment of the trial court is reversed and the case is remanded for further
proceedings consistent with this opinion. Tex. R. App. P. 43.2(d).




 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion on Motion for Rehearing 

delivered and filed this the 1st day of November, 2007. 

Dissenting Memorandum Opinion on Motion for Rehearing

by Justice Rose Vela.
1. We overrule appellees' motion for rehearing, withdraw our memorandum opinion and judgment
issued on August 31, 2007, and issue this memorandum opinion in its place.