NUMBER 13-07-00565-CV

 COURT OF APPEALS

 THIRTEENTH DISTRICT OF TEXAS

 CORPUS CHRISTI - EDINBURG

CARBON EL NORTEÑO, L.L.C.,
RAMON OMAR ALVARADO,
AND MICAELA ALVARADO, Appellants,

 v.

JORGE SANCHEZ AND YOLANDA
SANCHEZ D/B/A JBY INVESTMENTS, Appellees.

 On appeal from the 332nd District Court of Hidalgo County, Texas.

 MEMORANDUM OPINION

 Before Justices Rodriguez, Garza, and Vela
 Memorandum Opinion by Justice Garza

 This case involves a dispute over the sale of Carbon El Norteño, L.L.C., an entity

that buys mesquite charcoal from Mexico for sale and distribution in the United States.

Appellants, Carbon El Norteño, L.L.C., Omar Alvarado, and Micaela Alvarado (collectively

“Carbon”), appeal the trial court’s granting of a traditional motion for summary judgment

filed by appellees, Jorge Sanchez and Yolanda Sanchez d/b/a JBY Investments
(collectively “Sanchez”). By three issues, Carbon contends that the trial court erred in

granting Sanchez’s motion for summary judgment. We affirm the judgment as modified.

 I. FACTUAL AND PROCEDURAL BACKGROUND

 The Alvarados owned and operated Carbon El Norteño, L.L.C. On or about January

31, 2005, the Alvarados executed an agreement with Sanchez for the sale and purchase

of the company and its assets in exchange for $1,000 in consideration. The Alvarados

signed the agreement in their individual capacities, and Omar signed the agreement in his

capacity as president and duly authorized corporate representative of the company.

 Sanchez assumed the trade name “JBY Investments” to operate the company. In

reliance on the agreement, Sanchez obtained a $100,000 line of credit with Lone Star

National Bank (“Lone Star”) for the benefit of the company. Lone Star took a security

interest in the company’s assets, inventory, and accounts receivable.

 Subsequently, Omar was hired as an employee of the company. Omar was

responsible for: (1) managing the day-to-day operations of the warehouse; (2) customer

service tasks; and (3) managing the company’s accounts receivable. Later, Sanchez

alleged that Omar was “not devoting adequate time to the business and was converting

monies owed to JBY Investments that he collected in connection with the sale of products

owned and acquired by JBY Investments to his own personal use.” After confronting Omar

about the allegations, Sanchez terminated Omar’s employment.

 On September 7, 2005, Carbon filed its original petition and application for injunctive

relief and accounting, asserting that the Alvarados still owned the business and that

Sanchez attempted to exclude them from the business.1 In addition, Carbon applied for

 1
 On Septem ber 8, 2005, Lone Star National Bank (“Lone Star”) filed a plea in intervention to protect
its security interest in the com pany’s assets. However, Lone Star is not a party to this appeal.

 2
a temporary restraining order, a preliminary injunction, and a permanent injunction and

asserted the following causes of action: (1) conversion; (2) civil theft; (3) fraud; (4)

negligent misrepresentation; (5) breach of contract; (6) quantum meruit; and (7) dissolution

and accounting of the company.

 On October 3, 2005, Sanchez filed an original counterclaim for, among other things,

breach of contract and an application for temporary injunction. Carbon did not file an

answer to Sanchez’s counterclaim.

 On September 14, 2006, Sanchez filed a no-evidence motion for summary

judgment, asserting that Carbon had failed to provide any evidence in support of the claims

contained in its original petition. Sanchez’s no-evidence motion for summary judgment

was granted on November 13, 2006. Furthermore, all of Carbon’s claims against Sanchez

were severed into a separate number, thereby making the order a final judgment.2 See In

re Burlington Coat Factory, 167 S.W.3d 827, 830 (Tex. 2005); Ritzell v. Espeche, 87

S.W.3d 536, 538 (Tex. 2002); Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001)

(holding that when the trial court resolves some claims by summary disposition, leaving

other claims unresolved, the judgment is final if it unequivocally states it finally disposes

of all claims).

 On February 15, 2007, Sanchez filed a traditional motion for summary judgment

pertaining to its breach of contract claim. As summary judgment evidence, Sanchez

attached, among other things, a copy of the agreement, a copy of a $1,000 check issued

by Sanchez and cashed by the Alvarados, and an affidavit executed by Jorge.

 The trial court set a hearing on Sanchez’s traditional motion for summary judgment

 2
 Carbon has not appealed the trial court’s granting of Sanchez’s no-evidence m otion for sum m ary
judgm ent.

 3
for May 21, 2007. On May 15, 2007, Carbon, without leave of court, filed its response to

Sanchez’s traditional motion for summary judgment. See TEX . R. CIV. P. 166a(c) (“Except

on leave of court, the adverse party, not later than seven days prior to the day of hearing

may file and serve opposing affidavits or other written response.”). In its response, Carbon

took issue with Sanchez’s damages calculation, particularly a statement made in

Sanchez’s affidavit asserting that it had sustained $350,000 in future lost profits due to

Carbon’s alleged misconduct.

 The trial court conducted the May 21, 2007 hearing on Sanchez’s traditional motion

for summary judgment, and it signed an order granting Sanchez’s motion on June 7, 2007.

In its order, the trial court found that Sanchez was entitled to the following from Carbon:

(1) $450,000 in damages; (2) $45,000 in attorney’s fees; and (3) all costs of court and post-

judgment interest at a rate of 8.25 percent. In addition, the trial court severed all causes

of action by Sanchez against Carbon into a separate cause number and stated that the

order was a final, appealable judgment. See In re Burlington Coat Factory, 167 S.W.3d

at 830; Ritzell, 87 S.W.3d at 538; Lehmann, 39 S.W.3d at 200.

 On July 3, 2007, Carbon filed a motion for new trial, contending that the trial court

erred in granting Sanchez’s traditional motion for summary judgment because the attached

affidavit executed by Omar raised a fact issue as to the sale of the company. On August

8, 2007, the trial court conducted a hearing on Carbon’s motion for new trial; the motion

was denied on August 20, 2007. Carbon filed its notice of appeal on September 10, 2007.3

 3
 Generally, a notice of appeal m ust be filed within ninety days after the judgm ent is signed if a m otion
for new trial is tim ely filed. T EX . R. A PP . P. 26.1(a)(1). Carbon tim ely filed its m otion for new trial on July 3,
2007. See T EX . R. C IV . P. 329b(a) (“A m otion for new trial, if filed, shall be filed prior to or within thirty days
after the judgm ent or other order com plained of is signed.”). Therefore, Carbon was required to file its notice
of appeal on Septem ber 7, 2007, which it did not do. See T EX . R. A PP . P. 26.1(a)(1). However, on Septem ber
14, 2007, Carbon filed a m otion for leave with this Court seeking to file its late notice of appeal. W e granted
Carbon’s m otion on Septem ber 27, 2007. See T EX . R. A PP . P. 26.3 (providing that an appellate court m ay

 4
 II. STANDARD OF REVIEW

 The function of summary judgment is to eliminate patently unmeritorious claims and

defenses, not to deprive litigants of the right to a trial by jury. Tex. Dep’t of Parks & Wildlife

v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand, 776 S.W.2d 551, 556

(Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no

pet.). We review the trial court’s summary judgment de novo. Provident Life and Accident

Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

 Under a traditional motion for summary judgment, the movant must establish that

no material fact issue exists and that it is entitled to judgment as a matter of law. TEX . R.

CIV. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Alaniz, 105

S.W.3d at 345; Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002,

pet. denied). After the movant produces evidence sufficient to show that it is entitled to

summary judgment, the nonmovant must then present evidence raising a fact issue. See

Walker v. Harris, 924 S.W.3d 375, 377 (Tex. 1996).

 III. ANALYSIS

A. Sanchez’s Breach of Contract Action

 In its first issue, Carbon asserts that the trial court erred in granting Sanchez’s

motion for summary judgment because Jorge’s affidavit did not establish the requisite

elements for a breach of contract action. In addition, Carbon argues that it presented

competent summary judgment evidence that controverted Jorge’s affidavit. Sanchez

contends that it established its breach of contract claim and that Carbon failed to produce

extend the tim e to file a notice of appeal if, within fifteen days after the original deadline for filing the notice
of appeal, the party files in the trial court the notice of appeal and files a m otion to extend tim e in the appellate
court). Therefore, Carbon’s notice of appeal was tim ely filed.

 5
competent summary judgment evidence raising an issue of material fact.

 1. Applicable Law

 To recover for breach of contract, a claimant must prove that: (1) there is a valid,

enforceable contract between the parties; (2) the plaintiff performed as required under the

contract; (3) the defendant breached the contract; and (4) the defendant’s breach caused

the claimant injury. Exxon Mobil Corp. v. Gill, 221 S.W.3d 841, 853 (Tex. App.–Corpus

Christi 2007, pet. filed) (citing Valero Mktg. & Supply Co. v. Kalama Int’l, L.L.C., 51 S.W.3d

345, 351 (Tex. App.–Houston [1st Dist.] 2001, no pet.)).

 2. Discussion

 In support of its traditional motion for summary judgment, Sanchez attached, among

other things, a copy of the agreement, a copy of a $1,000 check issued by Sanchez and

cashed by the Alvarados, and an affidavit executed by Jorge. It is undisputed that the

agreement constituted a valid, enforceable contract. The agreement, signed by Omar in

his individual and representative capacities and by Micaela in her individual capacity,

provided as follows:

 ARTICLE 1

 SALE
 ....

 1.02. Seller [the Alvarados] agrees to sell, convey, transfer, assign, and
 deliver to Purchaser [Sanchez], and Purchaser agrees to purchase or
 accept from Seller, all of the following assets of Company:

 ....

 (b) All of Seller’s and Company’s rights and interests in and to the contracts,
 agreements, purchase orders, real property, real. [sic] estate leases, and
 personal property leases; and all of Company’s claims and rights under all
 notes, evidences of indebt-edness [sic], and deposits; and all rights and
 claims to refunds and adjustments of any kind owned by Company.

 6
 ....

 (f) All right, title, and interest of Seller in and to the name CARBON
 NORTENO, L.L.C., CARBON EL NORTENO or any variant of said name.

 ....

 Consideration for Sale

 1.03. In consideration of the sale and transfer of the assets of the Company
 and the representations, warranties, and covenants of Seller set forth
 in this Agreement, Purchaser shall pay to Seller the sum of $1,000.00
 by regular check on the Closing Date and other good and valuable
 consideration.

(Emphasis in original.)

 On February 2, 2005, Sanchez issued a $1,000 check to the Alvarados as

consideration required by the agreement. The back of the check indicates that the

Alvarados cashed the check. Jorge, in his affidavit, stated that “[f]ollowing the execution

of the agreement,” Omar became an employee of the company until Jorge discovered that

Omar had “converted funds owed to JBY Investments for his personal benefit.” See TEX .

R. CIV. P. 166a(c); Haynes v. City of Beaumont, 35 S.W.3d 166, 178 (Tex. App.–Texarkana

2000, no pet.) (holding that in serving as competent summary judgment proof, an affidavit

must be clear, positive, direct, credible, free from contradiction, and susceptible of being

readily controverted). Jorge also noted that Omar “claimed that he still owned the business

and filed a lawsuit seeking to exclude me [Jorge] from the business” after Jorge had

terminated Omar’s employment. Jorge further stated that Omar’s actions amounted to a

breach of the contract, and as a result, he suffered damages in the amount of $450,000,

which included the $100,000 line of credit and $350,000 in future lost profits. Carbon did

not timely submit summary judgment evidence controverting the evidence submitted by

Sanchez. See TEX . R. CIV. P. 166a(c). Thus, Sanchez’s summary judgment evidence

 7
established the basic elements for a breach of contract action. See Exxon Mobil Corp.,

221 S.W.3d at 853.

 On appeal, Carbon argues that Sanchez’s summary judgment evidence did not

establish the requisite elements for a breach of contract cause of action because Sanchez

did not provide any evidence demonstrating that all conditions precedent were met. In

particular, Carbon directs us to section 10.08 of the agreement which provides that “[i]n the

event this Agreement is not Closed by March 1, 2005, then this Agreement shall terminate

on and as of that date. . . .” However, rule 54 of the rules of civil procedure provides the

following:

 In pleading the performance or occurrence of conditions precedent, it shall
 be sufficient to aver generally that all conditions precedent have been
 performed or have occurred. When such performances or occurrences have
 been so plead, the party so pleading same shall be required to prove only
 such of them as are specifically denied by the opposite party.

TEX . R. CIV. P. 54.

 Carbon did not file an answer to Sanchez’s counterclaims; therefore, Carbon waived

its argument pertaining to conditions precedent by failing to file a pleading with the trial

court specifically denying which conditions precedent were not met by Sanchez. See id.;

see also Wade & Sons, Inc. v. Am. Std., Inc., 127 S.W.3d 814, 825-26 (Tex. App.–San

Antonio 2003, pet. denied); Gill Sav. Ass’n v. Int’l Supply Co., 759 S.W.2d 697, 701 (Tex.

App.–Dallas 1988, writ denied); Sunbelt Constr. Corp. v. S & D Mech. Contractors, Inc.,

668 S.W.2d 415, 417-18 (Tex. App.–Corpus Christi 1983, writ ref’d n.r.e.).

 Based on the foregoing, we conclude that Sanchez established the requisite

elements for a breach of contract action. We further conclude that Carbon has failed to

raise a genuine issue of material fact on appeal; therefore, the trial court properly granted

 8
Sanchez’s traditional motion for summary judgment. Accordingly, we overrule Carbon’s

first issue.

B. The Trial Court’s Damage Award

 In its second issue, Carbon argues that the trial court’s award of $450,000 in money

damages to Sanchez was not supported by competent summary judgment evidence.

Specifically, Carbon takes issue with Sanchez’s future lost profits calculation. Sanchez

asserts that the trial court’s award of damages in the amount of $100,000 should

be affirmed. However, Sanchez agrees to voluntarily remit the $350,000 damage award.

 1. Applicable Law

 Texas Rule of Appellate Procedure 46.5 provides, in relevant part, that:

 If a court of appeals reverses the trial court’s judgment because of a legal
 error that affects only part of the damages awarded by the judgment, the
 affected party may—within 15 days after the court of appeals’
 judgment—voluntarily remit the amount that the affected party believes will
 cure the reversible error. . . . If the remitittur is timely filed and the court of
 appeals determines that the voluntary remittitur cures the reversible error,
 then the court must accept the remittitur and reform and affirm the trial court
 judgment in accordance with the remittitur.

TEX . R. APP. P. 46.5.

 2. Discussion

 Sanchez averred that it sustained $450,000 in damages, which was comprised of

$100,000 in damages associated with the line of credit from Lone Star and $350,000 in

future lost profits. On appeal, Carbon takes issue solely with the future lost profits

calculation. Sanchez did not provide any competent summary judgment evidence to

support his calculation of $350,000 in future lost profits. Carbon correctly notes that

“opinions or estimates of lost profits must be based on objective facts, figures, or data from

which the amount of lost profits may be ascertained.” Szczepanik v. First S. Trust. Co.,

 9
883 S.W.2d 648, 649 (Tex. 1994) (per curiam) (citing Holt Atherton Ind., Inc. v. Heine, 835

S.W.2d 80, 84 (Tex. 1992)); see also Hyperoam, Inc. v. Valley Wireless Internet, No. 13-

04-180-CV, 2005 Tex. App. LEXIS 6616, at **22-26 (Tex. App.–Corpus Christi Aug. 18,

2005, no pet.) (mem. op.) (holding that an “injured party must do more than show that it

suffered some lost profits” and lost profits must be proven by “competent evidence with

reasonable certainty” rather than “speculation and conjecture”). Because Sanchez did not

provide “competent evidence with reasonable certainty” with respect to its future lost

profits, the trial court’s awarding of the full $350,000 in lost profits constitutes reversible

error. See Szczepanik, 883 S.W.2d at 649; Heine, 835 S.W.2d at 84; see also Hyperoam,

Inc., 2005 Tex. App. LEXIS 6616, at **22-26. However, Sanchez, in its brief, agreed to

voluntarily remit the damage award with respect to future lost profits. We conclude that

Sanchez’s request is timely and that the voluntary remittitur would cure the reversible

error—Sanchez’s future lost profits calculation—of which Carbon complains. We therefore

order remittitur of $350,000. See id.; see also Baptist Mem’l Hosp. Sys. v. Smith, 882

S.W.2d 67, 79 (Tex. App.–San Antonio 1991, writ denied) (“An appellate court should be

reluctant to disturb the award, particularly after substantial remittitur has been made.”).

However, because Carbon has not challenged the damages associated with the line of

credit obtained from Lone Star, we uphold the remaining $100,000 in damages awarded

to Sanchez. Accordingly, we overrule Carbon’s second issue to the extent it complains of

the $100,000 in damages.

C. Individual Liability of the Alvarados

 In its final issue, Carbon contends that the trial court erred in granting summary

judgment against the Alvarados in their individual capacities. Specifically, Carbon argues

 10
that because the company was properly registered as a limited liability company, the

Alvarados are shielded from personal liability. Sanchez asserts that the Alvarados are

individually liable for breach of contract because: (1) both Omar and Micaela signed the

agreement in their individual capacity; (2) Carbon failed to file a verified plea challenging

capacity; and (3) Carbon waived this issue by failing to raise it before the trial court.

 1. Applicable Law

 Rule 93 of the Texas Rules of Civil Procedure requires that when capacity is

contested, a verified plea must be filed unless the truth of the matter appears of record.

TEX . R. CIV. P. 93; see Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 56 (Tex. 2003);

Pledger v. Schoellkopf, 762 S.W.2d 145, 146 (Tex. 1988). Moreover, a capacity challenge

can be waived by a party’s failure to properly raise the issue in the trial court. See Sibley,

111 S.W.3d at 56 (citing Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d

659, 662 (Tex. 1996); Realtex Corp. v. Tyler, 627 S.W.2d 441, 442 (Tex. App.–Houston

[1st Dist.] 1981, no writ)).

 2. Discussion

 The record reflects that Carbon did not raise the issue of capacity, much less file a

verified plea challenging capacity, in the trial court. See TEX . R. CIV. P. 93; TEX . R. APP. P.

33.1; see also Sibley, 111 S.W.3d at 56. Moreover, Omar and Micaela both signed the

agreement selling the company in their individual capacities. See Taylor-Made Hose, Inc.

v. Wilkerson, 21 S.W.3d 484, 488 (Tex. App.–San Antonio 2000, no pet.) (holding that a

party’s signature renders him individually liable for the debt of another as a matter of law

if the instrument, on its face, demonstrates that the party signed it); see also A. Duda &

Sons, Inc. v. Madera, 687 S.W.2d 83, 85 (Tex. App.–Houston [1st Dist.] 1985, no writ) (“A

 11
signer is personally liable on an instrument that does not show that he signed in a

representative capacity.”). In addition, Carbon’s assertion that the Texas Limited Liability

Company Act protects the Alvarados from individual liability is not supported by the record.

See TEX . REV. CIV. STAT . ANN . art. 1528n, § 4.03 (Vernon 2001) (providing that “[a] member

of a limited liability company is not a proper party to proceedings by or against a limited

liability company, except where the object is to enforce a member’s right against or liability

to the limited liability company”). The record demonstrates that the Alvarados sold their

ownership interest in the company to Sanchez via the agreement and that Sanchez

terminated Omar’s employment after allegedly discovering various instances of

misconduct. Therefore, neither Omar nor Michaela were members of the limited liability

company at the time this suit was instituted. We therefore conclude that the trial court did

not err in granting Sanchez’s motion for summary judgment in the Alvarados’ individual

capacities. Accordingly, we overrule Carbon’s third issue.

 IV. CONCLUSION

 The judgment of the trial court is modified to reduce Sanchez’s damages to

$100,000. As modified, the judgment is affirmed.

 DORI CONTRERAS GARZA,
 Justice

Memorandum Opinion delivered and
filed this the 28th day of August, 2008.

 12