NUMBER 13-07-00565-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CARBON EL NORTEÑO, L.L.C.,

RAMON OMAR ALVARADO, 

AND MICAELA ALVARADO, Appellants,


v.



JORGE SANCHEZ AND YOLANDA

SANCHEZ D/B/A JBY INVESTMENTS, Appellees.

 




On appeal from the 332nd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza


 

 This case involves a dispute over the sale of Carbon El Norteño, L.L.C., an entity
that buys mesquite charcoal from Mexico for sale and distribution in the United States.
Appellants, Carbon El Norteño, L.L.C., Omar Alvarado, and Micaela Alvarado (collectively
"Carbon"), appeal the trial court's granting of a traditional motion for summary judgment
filed by appellees, Jorge Sanchez and Yolanda Sanchez d/b/a JBY Investments
(collectively "Sanchez"). By three issues, Carbon contends that the trial court erred in
granting Sanchez's motion for summary judgment. We affirm the judgment as modified.I. Factual and Procedural Background


 The Alvarados owned and operated Carbon El Norteño, L.L.C. On or about January
31, 2005, the Alvarados executed an agreement with Sanchez for the sale and purchase
of the company and its assets in exchange for $1,000 in consideration. The Alvarados
signed the agreement in their individual capacities, and Omar signed the agreement in his
capacity as president and duly authorized corporate representative of the company.

 Sanchez assumed the trade name "JBY Investments" to operate the company. In
reliance on the agreement, Sanchez obtained a $100,000 line of credit with Lone Star
National Bank ("Lone Star") for the benefit of the company. Lone Star took a security
interest in the company's assets, inventory, and accounts receivable. 

 Subsequently, Omar was hired as an employee of the company. Omar was
responsible for: (1) managing the day-to-day operations of the warehouse; (2) customer
service tasks; and (3) managing the company's accounts receivable. Later, Sanchez
alleged that Omar was "not devoting adequate time to the business and was converting
monies owed to JBY Investments that he collected in connection with the sale of products
owned and acquired by JBY Investments to his own personal use." After confronting Omar
about the allegations, Sanchez terminated Omar's employment.

 On September 7, 2005, Carbon filed its original petition and application for injunctive
relief and accounting, asserting that the Alvarados still owned the business and that
Sanchez attempted to exclude them from the business. (1) In addition, Carbon applied for
a temporary restraining order, a preliminary injunction, and a permanent injunction and
asserted the following causes of action: (1) conversion; (2) civil theft; (3) fraud; (4)
negligent misrepresentation; (5) breach of contract; (6) quantum meruit; and (7) dissolution
and accounting of the company.

 On October 3, 2005, Sanchez filed an original counterclaim for, among other things,
breach of contract and an application for temporary injunction. Carbon did not file an
answer to Sanchez's counterclaim.

 On September 14, 2006, Sanchez filed a no-evidence motion for summary
judgment, asserting that Carbon had failed to provide any evidence in support of the claims
contained in its original petition. Sanchez's no-evidence motion for summary judgment
was granted on November 13, 2006. Furthermore, all of Carbon's claims against Sanchez
were severed into a separate number, thereby making the order a final judgment. (2) See In
re Burlington Coat Factory, 167 S.W.3d 827, 830 (Tex. 2005); Ritzell v. Espeche, 87
S.W.3d 536, 538 (Tex. 2002); Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001)
(holding that when the trial court resolves some claims by summary disposition, leaving
other claims unresolved, the judgment is final if it unequivocally states it finally disposes
of all claims).

 On February 15, 2007, Sanchez filed a traditional motion for summary judgment
pertaining to its breach of contract claim. As summary judgment evidence, Sanchez
attached, among other things, a copy of the agreement, a copy of a $1,000 check issued
by Sanchez and cashed by the Alvarados, and an affidavit executed by Jorge.

 The trial court set a hearing on Sanchez's traditional motion for summary judgment
for May 21, 2007. On May 15, 2007, Carbon, without leave of court, filed its response to
Sanchez's traditional motion for summary judgment. See Tex. R. Civ. P. 166a(c) ("Except
on leave of court, the adverse party, not later than seven days prior to the day of hearing
may file and serve opposing affidavits or other written response."). In its response, Carbon
took issue with Sanchez's damages calculation, particularly a statement made in
Sanchez's affidavit asserting that it had sustained $350,000 in future lost profits due to
Carbon's alleged misconduct. 

 The trial court conducted the May 21, 2007 hearing on Sanchez's traditional motion
for summary judgment, and it signed an order granting Sanchez's motion on June 7, 2007. 
In its order, the trial court found that Sanchez was entitled to the following from Carbon:
(1) $450,000 in damages; (2) $45,000 in attorney's fees; and (3) all costs of court and post-judgment interest at a rate of 8.25 percent. In addition, the trial court severed all causes
of action by Sanchez against Carbon into a separate cause number and stated that the
order was a final, appealable judgment. See In re Burlington Coat Factory, 167 S.W.3d
at 830; Ritzell, 87 S.W.3d at 538; Lehmann, 39 S.W.3d at 200.

 On July 3, 2007, Carbon filed a motion for new trial, contending that the trial court
erred in granting Sanchez's traditional motion for summary judgment because the attached
affidavit executed by Omar raised a fact issue as to the sale of the company. On August
8, 2007, the trial court conducted a hearing on Carbon's motion for new trial; the motion
was denied on August 20, 2007. Carbon filed its notice of appeal on September 10, 2007. (3)II. Standard of Review


 The function of summary judgment is to eliminate patently unmeritorious claims and
defenses, not to deprive litigants of the right to a trial by jury. Tex. Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand, 776 S.W.2d 551, 556
(Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.-Corpus Christi 2003, no
pet.). We review the trial court's summary judgment de novo. Provident Life and Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

 Under a traditional motion for summary judgment, the movant must establish that
no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Alaniz, 105
S.W.3d at 345; Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.-Corpus Christi 2002,
pet. denied). After the movant produces evidence sufficient to show that it is entitled to
summary judgment, the nonmovant must then present evidence raising a fact issue. See
Walker v. Harris, 924 S.W.3d 375, 377 (Tex. 1996). 


III. Analysis


A. Sanchez's Breach of Contract Action

 In its first issue, Carbon asserts that the trial court erred in granting Sanchez's
motion for summary judgment because Jorge's affidavit did not establish the requisite
elements for a breach of contract action. In addition, Carbon argues that it presented
competent summary judgment evidence that controverted Jorge's affidavit. Sanchez
contends that it established its breach of contract claim and that Carbon failed to produce
competent summary judgment evidence raising an issue of material fact. 


 1. Applicable Law


 To recover for breach of contract, a claimant must prove that: (1) there is a valid,
enforceable contract between the parties; (2) the plaintiff performed as required under the
contract; (3) the defendant breached the contract; and (4) the defendant's breach caused
the claimant injury. Exxon Mobil Corp. v. Gill, 221 S.W.3d 841, 853 (Tex. App.-Corpus
Christi 2007, pet. filed) (citing Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d
345, 351 (Tex. App.-Houston [1st Dist.] 2001, no pet.)).


 2. Discussion


 In support of its traditional motion for summary judgment, Sanchez attached, among
other things, a copy of the agreement, a copy of a $1,000 check issued by Sanchez and
cashed by the Alvarados, and an affidavit executed by Jorge. It is undisputed that the
agreement constituted a valid, enforceable contract. The agreement, signed by Omar in
his individual and representative capacities and by Micaela in her individual capacity,
provided as follows:


ARTICLE 1


SALE

 . . . .

 

 1.02. Seller [the Alvarados] agrees to sell, convey, transfer, assign, and
deliver to Purchaser [Sanchez], and Purchaser agrees to purchase or
accept from Seller, all of the following assets of Company:

 

 . . . .

 

 (b) All of Seller's and Company's rights and interests in and to the contracts,
agreements, purchase orders, real property, real. [sic] estate leases, and
personal property leases; and all of Company's claims and rights under all
notes, evidences of indebt-edness [sic], and deposits; and all rights and
claims to refunds and adjustments of any kind owned by Company.

 . . . .

 

 (f) All right, title, and interest of Seller in and to the name CARBON
NORTENO, L.L.C., CARBON EL NORTENO or any variant of said name.

 

 . . . .


Consideration for Sale


 1.03. In consideration of the sale and transfer of the assets of the Company
and the representations, warranties, and covenants of Seller set forth
in this Agreement, Purchaser shall pay to Seller the sum of $1,000.00
by regular check on the Closing Date and other good and valuable
consideration.


(Emphasis in original.)

 On February 2, 2005, Sanchez issued a $1,000 check to the Alvarados as
consideration required by the agreement. The back of the check indicates that the
Alvarados cashed the check. Jorge, in his affidavit, stated that "[f]ollowing the execution
of the agreement," Omar became an employee of the company until Jorge discovered that
Omar had "converted funds owed to JBY Investments for his personal benefit." See Tex.
R. Civ. P. 166a(c); Haynes v. City of Beaumont, 35 S.W.3d 166, 178 (Tex. App.-Texarkana
2000, no pet.) (holding that in serving as competent summary judgment proof, an affidavit
must be clear, positive, direct, credible, free from contradiction, and susceptible of being
readily controverted). Jorge also noted that Omar "claimed that he still owned the business
and filed a lawsuit seeking to exclude me [Jorge] from the business" after Jorge had
terminated Omar's employment. Jorge further stated that Omar's actions amounted to a
breach of the contract, and as a result, he suffered damages in the amount of $450,000,
which included the $100,000 line of credit and $350,000 in future lost profits. Carbon did
not timely submit summary judgment evidence controverting the evidence submitted by
Sanchez. See Tex. R. Civ. P. 166a(c). Thus, Sanchez's summary judgment evidence
established the basic elements for a breach of contract action. See Exxon Mobil Corp.,
221 S.W.3d at 853. 

 On appeal, Carbon argues that Sanchez's summary judgment evidence did not
establish the requisite elements for a breach of contract cause of action because Sanchez
did not provide any evidence demonstrating that all conditions precedent were met. In
particular, Carbon directs us to section 10.08 of the agreement which provides that "[i]n the
event this Agreement is not Closed by March 1, 2005, then this Agreement shall terminate
on and as of that date. . . ." However, rule 54 of the rules of civil procedure provides the
following:

 In pleading the performance or occurrence of conditions precedent, it shall
be sufficient to aver generally that all conditions precedent have been
performed or have occurred. When such performances or occurrences have
been so plead, the party so pleading same shall be required to prove only
such of them as are specifically denied by the opposite party.


Tex. R. Civ. P. 54. 

 Carbon did not file an answer to Sanchez's counterclaims; therefore, Carbon waived
its argument pertaining to conditions precedent by failing to file a pleading with the trial
court specifically denying which conditions precedent were not met by Sanchez. See id.;
see also Wade & Sons, Inc. v. Am. Std., Inc., 127 S.W.3d 814, 825-26 (Tex. App.-San
Antonio 2003, pet. denied); Gill Sav. Ass'n v. Int'l Supply Co., 759 S.W.2d 697, 701 (Tex.
App.-Dallas 1988, writ denied); Sunbelt Constr. Corp. v. S & D Mech. Contractors, Inc.,
668 S.W.2d 415, 417-18 (Tex. App.-Corpus Christi 1983, writ ref'd n.r.e.). 

 Based on the foregoing, we conclude that Sanchez established the requisite
elements for a breach of contract action. We further conclude that Carbon has failed to
raise a genuine issue of material fact on appeal; therefore, the trial court properly granted
Sanchez's traditional motion for summary judgment. Accordingly, we overrule Carbon's
first issue.

B. The Trial Court's Damage Award 

 In its second issue, Carbon argues that the trial court's award of $450,000 in money
damages to Sanchez was not supported by competent summary judgment evidence. 
Specifically, Carbon takes issue with Sanchez's future lost profits calculation. Sanchez
asserts that the trial court's award of damages in the amount of $100,000 should be affirmed. However, Sanchez agrees to voluntarily remit the $350,000 damage award. 
1. Applicable Law

 Texas Rule of Appellate Procedure 46.5 provides, in relevant part, that:

 If a court of appeals reverses the trial court's judgment because of a legal
error that affects only part of the damages awarded by the judgment, the
affected party may--within 15 days after the court of appeals'
judgment--voluntarily remit the amount that the affected party believes will
cure the reversible error. . . . If the remitittur is timely filed and the court of
appeals determines that the voluntary remittitur cures the reversible error,
then the court must accept the remittitur and reform and affirm the trial court
judgment in accordance with the remittitur. 


Tex. R. App. P. 46.5.


 2. Discussion


 Sanchez averred that it sustained $450,000 in damages, which was comprised of
$100,000 in damages associated with the line of credit from Lone Star and $350,000 in
future lost profits. On appeal, Carbon takes issue solely with the future lost profits
calculation. Sanchez did not provide any competent summary judgment evidence to
support his calculation of $350,000 in future lost profits. Carbon correctly notes that
"opinions or estimates of lost profits must be based on objective facts, figures, or data from
which the amount of lost profits may be ascertained." Szczepanik v. First S. Trust. Co.,
883 S.W.2d 648, 649 (Tex. 1994) (per curiam) (citing Holt Atherton Ind., Inc. v. Heine, 835
S.W.2d 80, 84 (Tex. 1992)); see also Hyperoam, Inc. v. Valley Wireless Internet, No. 13-04-180-CV, 2005 Tex. App. LEXIS 6616, at **22-26 (Tex. App.-Corpus Christi Aug. 18,
2005, no pet.) (mem. op.) (holding that an "injured party must do more than show that it
suffered some lost profits" and lost profits must be proven by "competent evidence with
reasonable certainty" rather than "speculation and conjecture"). Because Sanchez did not
provide "competent evidence with reasonable certainty" with respect to its future lost
profits, the trial court's awarding of the full $350,000 in lost profits constitutes reversible
error. See Szczepanik, 883 S.W.2d at 649; Heine, 835 S.W.2d at 84; see also Hyperoam,
Inc., 2005 Tex. App. LEXIS 6616, at **22-26. However, Sanchez, in its brief, agreed to
voluntarily remit the damage award with respect to future lost profits. We conclude that
Sanchez's request is timely and that the voluntary remittitur would cure the reversible
error--Sanchez's future lost profits calculation--of which Carbon complains. We therefore
order remittitur of $350,000. See id.; see also Baptist Mem'l Hosp. Sys. v. Smith, 882
S.W.2d 67, 79 (Tex. App.-San Antonio 1991, writ denied) ("An appellate court should be
reluctant to disturb the award, particularly after substantial remittitur has been made."). 
However, because Carbon has not challenged the damages associated with the line of
credit obtained from Lone Star, we uphold the remaining $100,000 in damages awarded
to Sanchez. Accordingly, we overrule Carbon's second issue to the extent it complains of
the $100,000 in damages.


C. Individual Liability of the Alvarados 


 In its final issue, Carbon contends that the trial court erred in granting summary
judgment against the Alvarados in their individual capacities. Specifically, Carbon argues
that because the company was properly registered as a limited liability company, the
Alvarados are shielded from personal liability. Sanchez asserts that the Alvarados are
individually liable for breach of contract because: (1) both Omar and Micaela signed the
agreement in their individual capacity; (2) Carbon failed to file a verified plea challenging
capacity; and (3) Carbon waived this issue by failing to raise it before the trial court.

 1. Applicable Law


 Rule 93 of the Texas Rules of Civil Procedure requires that when capacity is
contested, a verified plea must be filed unless the truth of the matter appears of record. 
Tex. R. Civ. P. 93; see Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 56 (Tex. 2003);
Pledger v. Schoellkopf, 762 S.W.2d 145, 146 (Tex. 1988). Moreover, a capacity challenge
can be waived by a party's failure to properly raise the issue in the trial court. See Sibley,
111 S.W.3d at 56 (citing Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d
659, 662 (Tex. 1996); Realtex Corp. v. Tyler, 627 S.W.2d 441, 442 (Tex. App.-Houston
[1st Dist.] 1981, no writ)). 

 2. Discussion


 The record reflects that Carbon did not raise the issue of capacity, much less file a
verified plea challenging capacity, in the trial court. See Tex. R. Civ. P. 93; Tex. R. App. P.
33.1; see also Sibley, 111 S.W.3d at 56. Moreover, Omar and Micaela both signed the
agreement selling the company in their individual capacities. See Taylor-Made Hose, Inc.
v. Wilkerson, 21 S.W.3d 484, 488 (Tex. App.-San Antonio 2000, no pet.) (holding that a
party's signature renders him individually liable for the debt of another as a matter of law
if the instrument, on its face, demonstrates that the party signed it); see also A. Duda &
Sons, Inc. v. Madera, 687 S.W.2d 83, 85 (Tex. App.-Houston [1st Dist.] 1985, no writ) ("A
signer is personally liable on an instrument that does not show that he signed in a
representative capacity."). In addition, Carbon's assertion that the Texas Limited Liability
Company Act protects the Alvarados from individual liability is not supported by the record. 
See Tex. Rev. Civ. Stat. Ann. art. 1528n, § 4.03 (Vernon 2001) (providing that "[a] member
of a limited liability company is not a proper party to proceedings by or against a limited
liability company, except where the object is to enforce a member's right against or liability
to the limited liability company"). The record demonstrates that the Alvarados sold their
ownership interest in the company to Sanchez via the agreement and that Sanchez
terminated Omar's employment after allegedly discovering various instances of
misconduct. Therefore, neither Omar nor Michaela were members of the limited liability
company at the time this suit was instituted. We therefore conclude that the trial court did
not err in granting Sanchez's motion for summary judgment in the Alvarados' individual
capacities. Accordingly, we overrule Carbon's third issue. IV. Conclusion

 

 The judgment of the trial court is modified to reduce Sanchez's damages to
$100,000. As modified, the judgment is affirmed.


 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 28th day of August, 2008.




1. On September 8, 2005, Lone Star National Bank ("Lone Star") filed a plea in intervention to protect
its security interest in the company's assets. However, Lone Star is not a party to this appeal.
2. Carbon has not appealed the trial court's granting of Sanchez's no-evidence motion for summary
judgment.
3. Generally, a notice of appeal must be filed within ninety days after the judgment is signed if a motion
for new trial is timely filed. Tex. R. App. P. 26.1(a)(1). Carbon timely filed its motion for new trial on July 3,
2007. See Tex. R. Civ. P. 329b(a) ("A motion for new trial, if filed, shall be filed prior to or within thirty days
after the judgment or other order complained of is signed."). Therefore, Carbon was required to file its notice
of appeal on September 7, 2007, which it did not do. See Tex. R. App. P. 26.1(a)(1). However, on September
14, 2007, Carbon filed a motion for leave with this Court seeking to file its late notice of appeal. We granted
Carbon's motion on September 27, 2007. See Tex. R. App. P. 26.3 (providing that an appellate court may
extend the time to file a notice of appeal if, within fifteen days after the original deadline for filing the notice
of appeal, the party files in the trial court the notice of appeal and files a motion to extend time in the appellate
court). Therefore, Carbon's notice of appeal was timely filed.